THE STATE OF OHIO, APPELLEE, *v.*
GELICHAK, APPELLANT.

(No. 45564—Decided November 24, 1982.)

*Mr. John T. Corrigan,* prosecuting attorney, *Mr. William J. Brown,* attorney general, and *Ms. Michaele Tyner,* for appellee.

*Mr. Franklin J. Hickman, Ms. Louise McKinney* and *Ms. Carolyn L. Carter,* for appellant.

CORRIGAN, J. Appellant, Daniel Gelichak, shot and killed his mother on October 1, 1977, and was ordered to Lima State Hospital until found competent to stand trial. On January 24, 1979, appellant was found not guilty by reason of insanity and placed under the jurisdiction of the probate court, pursuant to R.C. 5122.01 *et seq.* He was confined at Lima State Hospital until March 29, 1979 when he no longer needed maximum security hospitalization and was transferred to Western Reserve Psychiatric Rehabilita-

tion Center (hereinafter "Western Reserve").

On June 11, 1979, appellant signed an application for voluntary admission which Western Reserve accepted, causing a probate court referee to order that appellant's case be dismissed on May 20, 1980. Appellant remained under the care of Western Reserve, although essentially living with his aunt and uncle on extended home passes since December 1979. He took college courses and worked with the computer at Western Reserve approximately twenty hours per week.

On September 2, 1981, appellant's conditional release was denied by the trial court which ordered appellant to continue on the same program. Western Reserve sought appellant's discharge in March 1982. After hearings in April, the court denied discharge on June 29, 1982 and rescinded all home passes. This timely appeal followed, assigning two errors for review:

"I. The decision of the trial court is against the weight of the evidence.

"II. The trial court erred in failing to dismiss the case for lack of jurisdiction."

I

In his first assignment of error, appellant argues that the court erred in finding him mentally ill and subject to hospitalization and that the court's commitment order is not the least restrictive alternative as required by R.C. 2945.40 (C).

First, we turn to the statutory scheme provided by R.C. 5122.01 *et seq.* R.C. 5122.15(B) reads:

"Unless, upon completion of the hearing the court finds *clear and convincing evidence* that the respondent is a mentally ill person subject to hospitalization by court order, it shall order his discharge immediately. * * *"[1] (Emphasis added.)

---

[1] This burden of presenting clear and convincing evidence has recently been held to be mandated by the Fourteenth Amendment to the United States Constitution in a state involuntary commitment proceeding. *Addington* v. *Texas* (1979), 441 U.S. 418.

The phrase "mentally ill person subject to hospitalization by court order" is defined in R.C. 5122.01(B) as "a mentally ill person who, because of his illness:

"(1) Represents a substantial risk of physical harm to himself as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;

"(2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;

"(3) Represents a substantial and immediate risk of serious physical impairment or injury to himself as manifested by evidence that he is unable to provide for and is not providing for his basic physical needs because of his mental illness and that appropriate provision for such needs cannot be made immediately available in the community; or

"(4) Would benefit from treatment in a hospital for his mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or himself."

Thus, it was necessary for the state to show by clear and convincing evidence that appellant fell within the definition provided in R.C. 5122.01(B). We hold, as a matter of law, that this burden was not met.[2]

All of the medical witnesses who testified agreed that appellant was a good candidate for discharge because he was not showing signs of mental illness, took his medication voluntarily for the past three years, and most probably would continue with his medication and therapy upon discharge. The state presented no evidence that appellant represents a substantial risk of harm to himself or to others, or that he is unable to provide for his basic needs, or that his behavior creates a grave and imminent risk to substantial rights of others or himself. On the contrary, the uncontroverted evidence demonstrated that appellant had never been violent since his admission to Western Reserve, but was able to take college courses, work twenty hours per week, and live with his aunt and uncle on extended home passes since December 1979.

Apparently, the trial court gave greater weight to the medical witnesses' inability to predict with absolute certainty that appellant would never have another psychotic break and that he would positively follow his medication and therapy regimen. We find that the clear weight of the evidence showed, however, that appellant would, with a reasonable degree of medical certainty, follow his medication and therapy regimen as he had faithfully done voluntarily for the past three years and as his disposition seemed to indicate.

No one can predict human behavior with absolute certainty, but the reason the judicial process turns to psychiatrists and psychologists is to seek the experts' opinions and review the basis for such opinions. The experts, in turn, can only predict future behavior with a reasonable degree of medical certainty. There are no absolutes when dealing with the human mind and attempting to predict future behavior. However, the applicable statutes mandate that the judiciary weigh the medical testimony and order discharge or conditional release unless clear and convincing evidence proves that a respondent is a mentally ill person subject to hospitali-

---

[2] The definition of "mental illness" in R.C. 5122.01 (A) also reflects a high standard of proof. It requires "a *substantial* disorder of thought, mood, perception, orientation, or memory that *grossly impairs* judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life." (Emphasis added.)

zation by court order. R.C. 5122.15 (B). Since the state failed to fulfill its burden of proving by clear and convincing evidence that appellant is mentally ill and subject to hospitalization, the court erred in summarily denying appellant's application for discharge or conditional release and rescinding all home passes. Moreover, we agree with appellant that the court's order was not the least restrictive alternative as required by R.C. 2945.40 (D)(1).

The first assignment of error is well-taken.

## II

Next, appellant argues that the court had no jurisdiction over appellant as he had signed a voluntary admission form prior to amendment of R.C. 2945.40 prohibiting such action by one found not guilty by reason of insanity.

While appellant's argument appears plausible on its face, our review of the record reveals that this issue was never raised at the first hearing in September 1981, nor was the referee's action to dismiss the case ever entered as a matter of record in the court to be considered effective and binding. Indeed, appellant's counsel recognized the weakness of this argument when, at the April 29, 1982 hearing, he urged the court to dismiss the case because he "guessed" there was a journal entry dismissing the case after appellant's voluntary admission, and "if that exists," he would like to submit it to the court. Furthermore, all the parties involved — the hospital, the state, and even appellant himself — appear to have labored under the assumption that appellant was hospitalized as "not guilty by reason of insanity" rather than as a voluntary admission. We therefore hesitate allowing appellant to escape the court's jurisdiction based merely on a referee's order in 1980, brought to the court's attention for the first time at appellant's second hearing rather than at the 1981 hearing.

Thus, the second assignment of error lacks merit.

Due to the merit in the first assignment of error, the judgment is reversed and the case is remanded for further proceedings. From the total weight of the expert medical testimony it is clear that appellant's condition at the time of the hearing did not call for his rehospitalization in a locked ward, but instead merited very serious consideration for discharge. We conclude that appellant is entitled to an immediate hearing to allow the trial court to reevaluate the testimony and to determine his present condition after the latest restrictive confinement which the trial court imposed.

Reversed and remanded.

*Judgment reversed and cause remanded.*

NAHRA, J., concurs.

PRYATEL, C.J., concurs in judgment only.