The STATE of Ohio, Appellee,

v.

McNEAL, Appellant.

[Cite as *State v. McNeal* (1989), 64 Ohio App.3d 447.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 56383.

Decided Dec. 26, 1989.

*John T. Corrigan,* Prosecuting Attorney, *George J. Sadd,* Assistant Prosecuting Attorney; *Anthony J. Celebrezze, Jr.,* Attorney General, and *Robert J. Marek,* Assistant Attorney General, for appellee.

*Stege, Delbaum & Hickman Co., L.P.A.,* and *Franklin J. Hickman,* for appellant.

ANN MCMANAMON, Chief Justice.

Lawrence McNeal was found not guilty by reason of insanity in the 1980 stabbing death of his girlfriend, Renee Tinsley. After commitment to psychiatric institutions for less than a year, he was placed on conditional release. This appeal arises from an order by the trial court on August 12, 1988, denying him a discharge. In two assignments of error, McNeal alleges this decision is not supported by clear and convincing evidence and, alternatively, if the decision is in accord with Ohio law, then the law is unconstitutional as applied to this case. We find the first assignment of error is well taken and reverse.

Commencing in 1981, McNeal was required to take two milligrams daily of Stelazine, a psychotropic drug, and to visit a psychiatrist monthly. Periodically, the court decreased the frequency to semi-annual psychiatric visits.

In 1988, the Western Reserve Psychiatric Habilitation Center filed an application for McNeal's discharge from conditional release. A hearing began on July 18, 1988. The court continued it after the petitioner presented his evidence. No further hearing was ever conducted and the court made its decision without any presentation by the state. In the entry dated August 12, 1988, the court continued McNeal's conditional release, requiring outpatient psychiatric visits every two months as well as continued medication if prescribed by the Medical Director of Western Reserve Psychiatric Habilitation Center.

It is undisputed that McNeal has lived successfully in the community since his 1981 conditional release. He is married, the father of two children and conducts his own trucking business. His wife considers him "an excellent father and exemplary husband." His doctors swear he has shown no signs of mental illness or dangerous behavior since the slaying in 1980, when McNeal admits he was in an altered mental state. With the benefit of hindsight, his doctors now agree that McNeal is not schizophrenic, as was originally diagnosed in 1980, but suffered instead from schizophreniform psychosis which, by definition, is an illness that does not last more than six months. The doctors also swore that McNeal's two milligram daily dose of Stelazine is so minute that, were he to discontinue taking it, there would be no effect on his condition.

In his first assignment of error, McNeal contends the trial court's decision is not supported by clear and convincing evidence and thus is contrary to Ohio law.

R.C. 5122.01 requires hospitalization for a person found to be mentally ill and who represents "a substantial risk of physical harm to himself or other

members of society at the time of the commitment hearing." The state must prove the person requires hospitalization by clear and convincing evidence. *In re Burton* (1984), 11 Ohio St.3d 147, 149, 11 OBR 465, 466–467, 464 N.E.2d 530, 533–534. In making its determination, the court must look to the "totality of the circumstances" and consider the following factors:

"(1) whether, in the court's view, the individual currently represents a substantial risk of physical harm to himself or other members of society; (2) psychiatric and medical testimony as to the present mental and physical condition of the alleged incompetent; (3) whether the person has insight into his condition so that he will continue treatment as prescribed or seek professional assistance if needed; (4) the grounds upon which the state relies for the proposed commitment; (5) any past history which is relevant to establish the individual's degree of conformity to the laws, rules, regulations and values of society; and (6) if there is evidence that the person's mental illness is in a state of remission, the court must also consider the medically suggested cause and degree of the remission and the probability that the individual will continue treatment to maintain the remissive state of his illness should he be released from commitment." *Burton, supra.*

At the hearing, the trial court heard psychiatric testimony that McNeal is not mentally ill at present and poses no threat of physical harm to himself or society in general. McNeal swore he understood what his problem was and understood the need to follow doctor's instructions. McNeal's wife also indicated that she was capable of seeking professional assistance for her husband were symptoms of his schizophreniform psychosis to reappear. Doctors also reported that McNeal faithfully followed their orders for seven years and has never, in that period, shown any indication of mental instability. Further, they indicated his medication dosage is so low as to have no effect on his condition. The state presented no evidence.

In a case where all the medical witnesses testified that an appellant should be discharged because he showed no signs of mental illness, voluntarily took his medication over a period of three years and would probably continue to do so, this court mandated that "the judiciary weigh the medical testimony and order discharge * * * unless clear and convincing evidence proves that a respondent is a mentally ill person subject to hospitalization by court order." *State v. Gelichak* (1982), 8 Ohio App.3d 200, 201–202, 8 OBR 270, 271–273, 456 N.E.2d 1250, 1252–1253.

As the state failed to present any evidence, much less to prove by clear and convincing evidence that McNeal is mentally ill and a threat to himself and others, the trial court erred in not discharging him.

In light of this court's finding in the first assignment of error, McNeal's second allegation that the law was unconstitutionally applied to his case is moot and need not be addressed.

The judgment of the trial court is reversed.

*Judgment reversed.*

NAHRA and JOHN F. CORRIGAN, JJ., concur.