**Leonard W. COLLINS, Appellant,**

v.

**Dale C. CAMERON, Superintendent, St. Elizabeths Hospital, Appellee.**

**No. 20371.**

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 23, 1966.

Decided April 21, 1967.

Mr. Karl G. Feissner, Washington, D. C., for appellant.

Mr. Charles A. Mays, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Thomas Lumbard, Asst. U. S. Attys., were on the brief, for appellee.

Before PRETTYMAN, Senior Circuit Judge, and BURGER and McGOWAN, Circuit Judges.

BURGER, Circuit Judge:

Appellant appeals from the dismissal of a writ of habeas corpus seeking his release from St. Elizabeths Hospital where he was committed pursuant to D.C.Code § 24–301(d) after being found not guilty by reason of insanity on a charge of second degree murder.

The evidence before the District Judge consisted of the statutory certificate of the Superintendent of St. Elizabeths Hospital, D.C.Code § 24–301(e); testimony of Appellant and a staff psychiatrist taken at the hearing; and a report of an independent psychiatric examination conducted by the Legal Psychiatric Services.[1] The certificate of the Superintendent stated that Appellant was then suffering from an abnormal mental condition, schizophrenic reaction, chronic undifferentiated type, and that the Superintendent was not able to certify that, if released, Appellant would not be dangerous to himself or others within the foreseeable future.

The staff psychiatrist of St. Elizabeths who testified had examined, observed, and treated Appellant and was familiar with his medical record. He expressed the opinion that Appellant was then suffering from a mental illness of psychotic proportions, specifically, schizophrenic reaction, paranoid type, for which he was administered 100 milligrams of Thorazine, a tranquilizing drug, twice daily. He further testified that on one occasion when this drug was discontinued, Appellant became agitated upon reading of some person firing a gun near the White

1. This examination was ordered pursuant to Appellant's request for an independent examination.

House and became so upset that it was necessary for attendants to place him under physical restraint during which episode he sustained an injury. Appellant thereafter reported reactions which the witness characterized as delusional. Although the testimony was not free from ambiguity, the staff psychiatrist testified that "when [Appellant] is getting medication he doesn't express these ideas," referring to delusions of persecution such as conspiracies of various persons against him, being followed by Communists, or having his food poisoned, which he had otherwise exhibited. The psychiatrist also referred to extensive prior resort to alcohol and testified that "if he were to discontinue his medication and if he were to resort to alcohol, then I think he would again become dangerous." He also opined that in view of his long history of use of alcohol, "I would be inclined to think he might go back to it."

Although the District Court had responded to Appellant's request for an independent psychiatric examination by referring him to the Legal Psychiatric Services, Appellant did not call any member of that staff but rested his case on his own testimony.[2]

■ Appellant first argues that he is being punished unconstitutionally by his detention at St. Elizabeths because his treatment consists solely of tranquilizing drugs administered periodically. He claims that Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed. 2d 758 (1962) and Easter v. District of Columbia, 124 U.S.App.D.C. 33, 361 F.2d 50 (1966) (en banc), support his position; this is totally without substance. We have consistently held that detention under D.C.Code § 24–301(d) is not punitive but rather serves a two-fold purpose: (1) to protect the public and the subject, and (2) to afford a place and a procedure to treat and, if possible, to rehabilitate the subject. Ragsdale v. Overholser, 108

U.S.App.D.C. 308, 312, 281 F.2d 943, 947 (1960). *See also* Miller v. Cameron, 118 U.S.App.D.C. 323, 324, 335 F.2d 986, 987 (1964); Overholser v. O'Beirne, 112 U.S.App.D.C. 267, 268–274, 302 F.2d 852, 853–859 (1961). Nothing in *Robinson, supra,* or *Easter, supra,* impinges in any way on our holdings in these cases. In fact, we recognized in *Easter* that confinement for treatment "lies within the means available for dealing, constitutionally, with a menace to society," *supra,* at 124 U.S.App.D.C. 38, 361 F.2d at 55. *See also Robinson, supra* 370 U. S. at 676, 82 S.Ct. 1417 (concurring opinion of Douglas, J.).

Appellant urges that Thorazine can be administered as well outside the hospital as within, but this oversimplification overlooks the regular and routine observations by staff psychiatrists and nurses which govern the use and frequency of the drug and the reasonable likelihood that while hospitalized Appellant can be kept from use of alcohol. The District Court was aware that the indictment for second degree murder arose out of Appellant having pushed his wife off a balcony because he said she had awakened him after he had been drinking.

■ It is clear from the record that Appellant is not being detained solely because he is taking a tranquilizing drug;[3] on the contrary, he is hospitalized for treatment and rehabilitation consisting in part of the administering of such drug. Under some circumstances custodial care, standing alone, is a form of therapy for some conditions; the terms used in this record such as "environmental therapy" or "milieu therapy" are simply psychiatric descriptions of a form of treatment consisting of custody in an appropriate and protected atmosphere from which departure is not permitted.

■■ Appellant's second argument is that the evidence failed to support the

---

2. The report of the Legal Psychiatric Services filed with the court generally confirmed the conclusions of the Superintendent and staff psychiatrist.

3. Appellant's own testimony revealed that he is receiving other forms of treatment such as participation in group therapy sessions.

finding that he would be dangerous to himself or others if released. This argument is based on an erroneous concept of where the burden of proof lies when one seeks release after he is hospitalized under D.C.Code § 24–301(d). In that posture it is the *petitioner,* not the government, who bears the burden of showing his eligibility for relief. Overholser v. Leach, 103 U.S.App.D.C. 289, 291, 257 F.2d 667, 669 (1958), cert. denied, 359 U.S. 1013, 79 S.Ct. 1152, 3 L.Ed.2d 1038 (1959). And this burden is very heavy on those members of the "exceptional class" of persons created by D.C.Code § 24–301(d). *Leach, supra* at 291, 257 F.2d at 669; Ragsdale v. Overholser, *supra* at 312, 281 F.2d at 947. It is important that the standards laid down in *Leach,* which is the leading case on this subject, be kept in mind:

> The test of this statute is not whether a particular individual, engaged in the ordinary pursuits of life, is committable to a mental institution under the law governing civil commitments. Cf. Overholser v. Williams, 1958, 102 U.S.App.D.C. 248, 252 F.2d 629. Those laws do not apply here. This statute applies to an exceptional class of persons—people who have committed acts forbidden by law, who have obtained verdicts of "not guilty by reason of insanity," and who have been committed to a mental institution pursuant to the Code. People in that category are treated by Congress in a different fashion from persons who have somewhat similar mental conditions, but who have not committed offenses or obtained verdicts of not guilty by reason of insanity at criminal trials. The phrase "establishing his eligibility for release," as applied to the special class of which Leach is a member, means something different from having one or more psychiatrists say simply that the individual is "sane." There must be freedom from such abnormal mental condition as would make the individual dangerous to himself or the community in the reasonably foreseeable future.

*Supra* at 291–292, 257 F.2d at 669–670 (footnotes omitted). Based on the evidence presented the District Judge concluded that Appellant was suffering from an abnormal mental condition and would be dangerous to himself or others if released. That evidence abundantly supports the finding of non-eligibility and we see no basis for disturbing the action of the District Court.

Affirmed.

McGOWAN, Circuit Judge, concurs in the result.