IN RE BURTON.

[Cite as In re Burton (1984), 11 Ohio St. 3d 147.]

(No. 83-512—Decided June 20, 1984.)

148

*Messrs. Bailey, Houfek & Hoover* and *Mr. Douglas E. Hoover,* for appellant George W. Burton.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. J. Michael Evans,* for appellant Ohio Department of Mental Health.

*Mr. Theodore K. Kern* and *Ms. Marcy B. Samuel,* urging reversal for *amicus curiae,* Ohio Legal Rights Service.

*Messrs. Chester, Hoffman & Willcox, Mr. John J. Chester* and *Mr. William C. Wilkinson,* urging affirmance for *amicus curiae,* Balanced Mental Health Laws, Inc.

HOLMES, J. This appeal presents the court with a unique opportunity to explore an area of the law which is of vital importance to society and those persons who are hospitalized for a mental illness.

The issues before this court are threefold. One, can a person be subject to hospitalization under R.C. 5122.01(B) if his mental illness is in a state of remission and the remission is induced by psychotropic medication? Two, is the standard for hospitalization of the mentally ill as set forth in R.C. Chapter 5122, in violation of due process or equal protection? And, three, does a court's ruling, which orders a mental patient to be withdrawn from psychotropic medication in an effort to determine the cause of remission of the illness, violate R.C. 5122.15(F), due process, or equal protection? We will pass upon the issues in the order presented.

## I

In addressing the first issue, we initially turn to the statute which sets forth the criteria for judicial hospitalization of mentally ill persons. R.C. 5122.01 states, in pertinent part:

"(B) 'Mentally ill person subject to hospitalization by court order' means a mentally ill person who, because of his illness:

"(1) Represents a substantial risk of physical harm to himself as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;

"(2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;

"(3) Represents a substantial and immediate risk of serious physical impairment or injury to himself as manifested by evidence that he is unable to provide for and is not providing for his basic physical needs because of his mental illness and that appropriate provision for such needs cannot be made immediately available in the community; or

"(4) Would benefit from treatment in a hospital for his mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or himself."

From a reading of the statute, it is apparent that a person subject to hospitalization must represent a substantial risk of physical harm to himself or other members of society at the time of the commitment hearing. The individual's present mental state must be evaluated upon current or recent behavior as well as prior dangerous propensities of the person.

The General Assembly has, by way of R.C. 5122.01(B), provided the trial court with broad discretion to review the individual's past history in order to make a well-informed determination of his present mental condition.

In order to guide the court's discretion in this regard, we hereby adopt a "totality of the circumstances" test to be utilized in determining whether a person is subject to hospitalization under R.C. 5122.01(B). This test balances the individual's right against involuntary confinement in deprivation of his liberty, and the state's interest in committing the emotionally disturbed. See *Addington* v. *Texas* (1979), 441 U.S. 418. Factors which are to be considered by the court in a commitment hearing include, but are not limited to, the following: (1) whether, in the court's view, the individual currently represents a substantial risk of physical harm to himself or other members of society; (2) psychiatric and medical testimony as to the present mental and physical condition of the alleged incompetent; (3) whether the person has insight into his condition so that he will continue treatment as prescribed or seek professional assistance if needed; (4) the grounds upon which the state relies for the proposed commitment; (5) any past history which is relevant to establish the individual's degree of conformity to the laws, rules, regulations

and values of society; and (6) if there is evidence that the person's mental illness is in a state of remission, the court must also consider the medically suggested cause and degree of the remission and the probability that the individual will continue treatment to maintain the remissive state of his illness should he be released from commitment.

The trial court is not limited to consider only the above factors. The court may, in its discretion, consider other relevant evidence to make an informed decision as to the person's present mental condition.

From the record, there is clear and convincing evidence that appellant Burton is subject to hospitalization under R.C. 5122.01(B). See *Addington, supra,* at 433. The testimony of Dr. Robert L. Turton established that Burton continues to suffer from a psychiatric illness which is chronic in nature. Dr. Turton stated that appellant represents a substantial threat to himself and others even with the aid of medication. There was also evidence that appellant exhibits no remorse for his actions of October 14, 1978.

Testimony further established that Burton has no insight into his condition. Appellant does not recognize that the medication, in all likelihood, has caused a degree of remission in his mental illness. This accounts for his poor compliance with the scheduled administration of such medication. Should appellant be released from his controlled environment, we believe that he will discontinue use of the medication, thereby becoming actively psychotic once again and posing a substantial threat of harm to himself and others.[1]

Therefore, we hold that an individual whose mental illness is in a state of remission is subject to hospitalization pursuant to R.C. 5122.01(B) if there is a substantial likelihood that his freedom will result in physical harm to himself or other members of society. However, a nondangerous individual who is capable of surviving safely by himself, or with the assistance of willing and able family members or friends, is not subject to confinement under the statute. See, generally, *O'Connor* v. *Donaldson* (1975), 422 U.S. 563; *Collins* v. *Cameron* (C.A.D.C. 1967), 377 F. 2d 945; *In the Matter of Scopes* (1977), 59 App. Div. 2d 203, 398 N.Y.Supp. 2d 911. Accordingly, we affirm the court of appeals on this issue.

---

[1] This court agrees with the analogy set forth in *Wolonsky* v. *Balson* (1976), 58 Ohio App. 2d 25 [12 O.O.3d 34]. The appellate court was intrigued by the seemingly parallel situation of diabetics and others similarly situated with those mentally ill persons who are required to take medication to preserve the remission of their illness. The court stated that "[t]hese situations are not truly parallel, however, for except in the most unusual circumstances the failure of these people [diabetics and others] to voluntarily continue their medication can only result in harm to themselves and not result in harm to society. The primary reason which permits the segregation and commitment of psychotics is, however, the likelihood that their freedom will result in harm to society, so a failure to voluntarily continue a necessary course of psychotropic medication brings about the very condition which justifies and requires institutional commitment." *Wolonsky, supra,* at 27. This well-reasoned decision has been cited by numerous jurisdictions and a leading textbook in this area, Shapiro & Spece, Bioethics and Law (1981).

## II

Turning to the second query, appellant argues that the probate court applied a less restrictive standard for his commitment than contemplated by R.C. 5122.01(B). Specifically, appellant contends that due to the indictment returned against him and the court of common pleas order which found him incompetent to stand trial, he was judicially hospitalized under different standards than a person not indicted but suffering from a schizophrenic illness. We disagree as the record is devoid of any evidence which supports appellant's argument.

The United States Supreme Court has repeatedly recognized that civil commitment constitutes a significant deprivation of liberty that requires due process protection. *Addington, supra; Jackson* v. *Indiana* (1972), 406 U.S. 715; *Humphrey* v. *Cady* (1972), 405 U.S. 504; *In re Gault* (1967), 387 U.S. 1 [40 O.O.2d 378]; *Specht* v. *Patterson* (1967), 386 U.S. 605. Further, the court ruled in *Jackson* that a violation of equal protection existed when a person found incompetent to stand trial is subjected to less lenient commitment standards and more stringent standards for release than other persons not charged with crimes. *Id.* at 730.

In *Jackson,* the state of Indiana had three diverse statutory provisions which provided for the commitment of incompetent persons. One statute dealt specifically with those found incompetent to stand trial, while the other provisions concerned "feebleminded" persons and those suffering from psychiatric disorders. The requisite standards for commitment varied significantly and more lenient standards were provided for persons found incompetent to stand trial. In addition, the mentality required for release was greater for those found incompetent in a criminal proceeding. The Supreme Court ruled that such varying degrees of mental capacity required for commitment and release of individuals violated equal protection.

However, Ohio's civil commitment statute does not suffer from variable standards. This state has only one statutory commitment standard for those persons alleged to be mentally ill. That standard is set forth in R.C. 5122.01(B). Although R.C. 2945.38 allows for a different procedure to be utilized when one is found mentally incompetent to stand trial, the determination of whether the person is subject to hospitalization is still made under the standard provided in R.C. 5122.01(B). In addition, R.C. Chapter 5122 provides numerous procedural safeguards which sufficiently satisfy the requirements of due process. Thus, the standard for judicial hospitalization set forth in R.C. 5122.01(B) does not violate due process or equal protection as it relates to those persons found incompetent to stand trial. Therefore, we affirm the ruling of the court of appeals on this issue.

## III

Finally, we are asked to consider whether a court order violates R.C. 5122.15(F), due process, or equal protection when it mandates that a patient be withdrawn from his dosage of psychotropic medication in an effort to

determine the cause for remission of his mental illness.[2] This issue calls for a synopsis of a patient's right to treatment in a mental institution.

Although all states provide for the commitment of mentally ill persons, the statutory provisions for treatment are quite divergent. A small number of jurisdictions either do not specifically provide for treatment or refer vaguely to the manner of treatment. Other statutes indicate that treatment shall be provided to the extent that funds and facilities are available. Still other jurisdictions place an affirmative obligation on the state to treat patients committed to its institutions and provide the patient with an unqualified right to treatment.[3] Ohio falls within this latter type of provision.

Pursuant to R.C. 5122.15(C), an individual is hospitalized for a period not to exceed ninety days if a court finds the person mentally ill under the standard of R.C. 5122.01(B). Once the person is confined, an employee or agent of the mental health facility must provide a diagnosis, prognosis, and projected treatment plan for the patient. R.C. 5122.15(E). In addition, R.C. 5122.15(F) requires examination and treatment of the individual during the commitment period.

The clear import of these provisions is to provide the needed treatment to a person who has been involuntarily committed due to his mental condition. The very purpose of detention is to treat and, if possible, to rehabilitate the person. The state incurs a responsibility to provide such care as is reasonably calculated to achieve the patient's sanity or to improve his mental condition. Therefore, under the statute, there must be a bona fide effort to provide a meaningful amount of some appropriate form of treatment.

The landmark case of *Rouse* v. *Cameron* (C.A. D.C. 1966), 373 F. 2d 451, is recognized as the first decision to suggest that the right to treatment might have a constitutional basis. Since civil commitment involves deprivation of liberty, the Due Process Clause has the major role in regulating government actions in this area. At least one court has stated that if treatment is not made available on a reasonable and nondiscriminatory basis, there is a substantial risk that the constitutional requirements of equal protection will not be satisfied. *Nason* v. *Supt. of Bridgewater State Hosp.* (1968), 353 Mass. 604, 233 N.E. 2d 908.[4]

It was not until *Wyatt* v. *Stickney* (M.D. Ala. 1971), 325 F. Supp. 781,

---

[2] We recognize that there is authority for the proposition that an indefinite civil confinement without treatment may be so inhumane as to constitute cruel and unusual punishment under the Eighth Amendment. See *Robinson* v. *California* (1962), 370 U.S. 660, 668 (Douglas, J., concurring); Note, Civil Restraint, Mental Illness, and the Right to Treatment (1967), 77 Yale L.J. 87. However, we decline to pass upon the validity of the theory in the case *sub judice* as it has not been presented by the parties.

[3] For an extensive review of the law in this area, see Developments, Civil Commitment of the Mentally Ill (1974), 87 Harv. L. Rev. 1190.

[4] Although the equal protection argument has been recognized, this court is of the opinion that the Due Process Clause provides a much preferable basis for our decision.

that a court specifically held that a failure to provide adequate treatment was a violation of due process. The court articulated the constitutional rationale for the right to treatment, as follows:

"To deprive any citizen of his or her liberty upon the altruistic theory that confinement is for humane therapeutic reasons and then fail to provide adequate treatment violates the very fundamentals of due process." *Wyatt, supra,* at 785.

Furthermore, in *Jackson, supra,* at 738, the Supreme Court established the rule that "[a]t the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." If the "purpose" of the person's commitment is treatment, and such treatment is not provided, then the "nature" of the commitment bears no "reasonable relation" to its "purpose," and the constitutional rule in *Jackson* is thereby violated.

This court recognizes that the rationale for confinement in a great majority of cases is that the patient is in need of some form of treatment. The Due Process Clause requires that minimally adequate treatment be provided to such mentally ill persons confined under the statutes of this state. Therefore, we hold that pursuant to R.C. 5122.15(F) and the Due Process Clause, a person civilly committed to a state mental health facility has the right to receive such treatment as will provide him with a reasonable opportunity to be rehabilitated, if possible, or to improve his mental condition. See, *e.g.,* Symposium, The Right to Treatment (1969), 57 Geo. L.J. 673; Bazelon, Implementing the Right to Treatment (1969), 36 U. Chi. L. Rev. 742; Birnbaum, Some Remarks on "The Right to Treatment" (1971), 23 Ala. L. Rev. 623; Katz, The Right to Treatment — An Enchanting Legal Fiction? (1969), 36 U. Chi. L. Rev. 755; Note, The Nascent Right to Treatment (1967), 53 Va. L. Rev. 1134.

We also recognize the societal interest to have those accused of a crime brought to trial once their competent mental state is restored. Thus, in the appropriate case, there is reason to determine the cause and degree of the remission of a person's mental illness. When faced with such a determination we do not believe that it is consistent with due process, or the patient's statutory right to treatment, for a court to order that the patient be withdrawn from all psychotropic medication in the absence of expert testimony recommending the withdrawal. This is a decision to be made with the aid of the medical profession as courts are ill-equipped to resolve such queries.

At a hearing concerning this issue, special emphasis is to be placed on the testimony of the patient's treating physician or psychiatrist. If the treating expert testifies that it would not be harmful to the continued evaluation of the patient to observe him without the influence of psychotropic medication, then we believe the withholding of medication would be within the definition

of treatment.[5] In light of such testimony, the court may order that a patient be withheld from psychotropic medication within the purview of due process and the statutory right to treatment.

If the treating physician or psychiatrist is of the opinion that the withholding of medication is not warranted, the court may consider other expert testimony to determine whether medication should be withheld in an attempt to establish the cause and degree of the remission of the patient's mental illness. We emphasize, however, that the testimony of the treating physician or psychiatrist is to be given considerable weight by the trial court. There must be a substantial amount of independent expert testimony which recommends the withholding of medication for a court to entertain such a request. Then it is the duty of the court to weigh all of the testimony and come to a well-informed decision as to the best interests of the patient and the state.

In the present case, there was insufficient testimony in the record for this court to make a determination on this issue. Only one psychiatrist testified to the feasibility of a drug holiday for appellant Burton. In addition, appellant's treating psychiatrist was not questioned in regard to this issue.

Accordingly, the judgment of the court of appeals is reversed as to this issue, and the cause is remanded to the probate court for further proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, C. BROWN and J. P. CELEBREZZE, JJ., concur.

---

[5] This type of evaluation is known as a "drug holiday" which allows physicians and psychiatrists to observe the patient for a period of time in order to determine the future course of treatment. Drug holidays are not subject to widespread use due to the fact that it is difficult to restabilize a patient's mental condition without a significant increase in the dosage of psychotropic medication once the patient is removed from the medication.