OPINION
This matter concerns a timely appeal of a Mahoning County Common Pleas Court Judgment Entry ordering the continued commitment of Appellant, Robert Williams, at Massillon Psychiatric Center ("MPC"). Appellant was found not guilty by reason of insanity of murder in 1978 and was recommitted to MPC following a mandatory two year review hearing pursuant to R.C. §5122.15(H). Appellant argues that the state did not produce clear and convincing evidence that he was mentally ill or dangerous, that no evidence was produced that MPC was the least restrictive environment and that he is merely being preventively detained. For the following reasons, we affirm the decision of the trial court.
On July 23, 1971, Appellant plead not guilty by reason of insanity to two counts of first degree murder. On September 3, 1971, he was found to be insane and was committed to Lima State Hospital. On December 8, 1978, he was declared competent to stand trial. The case was tried to the court and on April 25, 1978, the court found Appellant not guilt by reason of insanity on both counts, with an order that Appellant was never to be released from custody on the chance that he might be cured. He was transferred to MPC in 1983. Continued commitment hearings have been held approximately every two years pursuant to R.C. § 1522.15(H).
On August 19, 1997, an Application for Continued Commitment was filed and a hearing was held pursuant to this application on December 8, 1997. The only witness at the hearing was Dr. Vinod Sharma, a staff psychiatrist at MPG and head of Appellant's treatment team. Dr. Sharma testified that in January, 1997, Appellant had been making good progress and had the highest level of privileges, other than conditional release, that could be offered at MPC. (Tr. 64.). In late January, 1997, Appellant was put on a new medication for approximately a week to ten days. (Tr. 31.) Appellant's condition deteriorated very quickly. He became psychotic, severely delusional and needed intensive treatment. (Tr. 3.) Appellant also assaulted the staff at MPC and required seclusion and physical restraints. (Application for Continued Commitment, 8/19/97.)
Dr. Sharma testified that Appellant had made significant recovery after he was returned to his previous medication, but it had taken almost a year. (Tr. 68.) Dr. Sharma stated that Appellant continued to have delusions of being the captain of a spaceship (Tr. 36) and of being poisoned at Woodside Hospital. (Tr. 41.) She testified that Appellant had not spoken overtly of the delusions for one and one-half years prior to the hearing. (Tr. 32.) Dr. Sharma testified that Appellant lacked motivation and did not understand his symptoms (Tr. 9), did not dress himself properly or take baths as scheduled (Tr. 11), was functioning at a marginal level and needed a lot of coaxing to follow rules (Tr. 8) and did not want to take his medication (Tr. 24.) She testified that refusal to follow the rules acts as a predictor for behavior outside the hospital. (Tr. 57.). Dr. Sharma also testified that Appellant did eat properly (Tr. 23), did take medication (Tr. 24), did not try to injure himself (Tr. 45) and was able to leave the grounds of MPC accompanied by a staff person (Tr. 68), but had not reached a level of progress sufficient for conditional release. (Tr. 71.)
On December 10, 1997 the trial court filed its Judgment Entry finding that: (1) Appellant was a mentally ill person subject to court ordered hospitalization, and (2) the least restrictive alternative was continued commitment at MPC. On January 2, 1998 Appellant filed his notice of appeal.
Appellant's first assignment of error alleges:
 "PETITIONER HOSPITAL WAS UNABLE AND FAILED TO CARRY ITS BURDEN OF PROVING A NEED FOR CONTINUED COMMITMENT BY CLEAR AND CONVINCING EVIDENCE., AND FAILED TO PROVE THAT MASSILLON STATE HOSPITAL WAS THE LEAST RESTRICTIVE ENVIRONMENT FOR RESPONDENT ROBERT WILLIAMS."
Appellant argues that the state failed to prove that Appellant had a mental illness as defined by R.C. § 5122.01(A). Appellant argues that the state failed to produce evidence to show that Appellant was subject to hospitalization by court order consistent with R.C. § 5122.01(B). Appellant further argues that his confinement in Massillon Psychiatric Center is not the least restrictive confinement alternative.
Upon a mandatory recommittal hearing, a court must find by clear and convincing evidence that the respondent is a mentally ill person subject to hospitalization in order to continue the hospitalization of the respondent. R.C. § 5122.15(B). Mental illness is defined as, "* * * a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life." R.C. § 5122.01(A).
Furthermore, according to R.C. § 5122.01:
 "(B) "`Mentally ill person subject to hospitalization by court order' means a mentally ill person who, because of the person's illness:
 "(1) Represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;
 "(2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior or serious physical harm, or other evidence of present dangerousness;
 "(3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community; or
 "(4) Would benefit from treatment in a hospital for his mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or himself."
If a court finds by clear and convincing evidence that a person is subject to hospitalization, it must then determine the least restrictive place of confinement in consideration of the patient's diagnosis and prognosis, preference of the patient and the projected treatment plan. R.C. § 5122.15(E).
In applying the relevant statutory law, we note again that the trial court is subject to the clear and convincing evidence standard. "Clear and convincing evidence" is:
 "That measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."
In Re Mental Illness of Thomas (1996), 108 Ohio App.3d 697, 700, quoting Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121,122.
In reviewing a matter under this standard, a reviewing court must examine the record to determine whether there was sufficient evidence before the trier of fact to satisfy the degree of proof.In Re Mental Illness of Thomas, 700. However, an appellate court may not substitute its own judgment for that of the trial court where the trial court's determination is supported by competent, credible evidence. Id.
In In re Burton, 11 Ohio St.3d 147, the Ohio Supreme Court established a totality of the circumstances test to guide the discretion of the trial court in making its recommitment hearing decision:
 "Factors which are to be considered by the court in a commitment hearing include, but are not limited to, the following: (1) whether, in the court's view, the individual currently represents a substantial risk of physical harm to himself or other members of society; (2) psychiatric and medical testimony as to the present mental and physical condition of the alleged incompetent; (3) whether the person has insight into his condition so that he will continue proposed commitment; (5) any past history which is relevant to establish the individual's degree of conformity to the laws, rules, regulations and values of society; and (6) if there is evidence that the person's mental illness is in a state of remission, the court must also consider the medically suggested cause and degree of the remission and the probability that the individual will continue treatment to maintain the remissive state of his illness should he be released from commitment."
Id., 149-50.
In the present case, the trial court's decision was supported by the expert testimony of Appellant's psychiatrist, Dr. Vinod Sharma. Dr. Sharma testified that Appellant suffers from paranoid schizophrenia (Tr. p. 7), that he takes the drug clozaril to control his psychotic thinking (Tr. p. 7), that Appellant became acutely psychotic after changing to a different medication (Tr. p. 31), that Appellant needed to be put in restraints after his medicine was changed (Tr. p. 31), that there was a good probability that Appellant would become dangerous if he missed two or three doses of his medication (Tr. 60, 62), that Appellant has a history of not wanting to take his medications (Tr. p. 24) and that MPC is the least restrictive environment for him (Tr. p. 9). Dr. Sharma also testified that Appellant did not completely follow hospital dress and bathing rules (Tr. p. 16, 18), that he continues to have delusions about being the captain of a spaceship (Tr. p. 36), that he functions at a marginal level and needs coaxing to follow rules (Tr. p. 8). These are all factors which the trial court should have considered in looking at the totality of the circumstances using the Burton factors.
In light of Dr. Sharma's testimony, there was sufficient evidence in the record for the trial court to find by clear and convincing evidence that Appellant was a mentally ill person subject to court ordered hospitalization pursuant to R.C. §5122.15.
With respect to Appellant's claim that Massillon Psychiatric Center was not the least restrictive confinement alternative, the Ohio Supreme Court's decision in State v. Johnson, (1987),32 Ohio St.3d 109 is the controlling law on this issue. In that case, the court stated that the determination of a treatment setting is within the sound discretion of the court. Id., syllabus of the court. We cannot reverse the trial court's decision here absent an abuse of discretion. This implies more than an error of judgment; it requires that the trial court exhibited, "perversity of will, passion, prejudice, partiality, or immoral delinquency." State v. Green (1996), 114 Ohio App.3d 204,207.
In the present case, Appellant presented no witnesses to argue for a less restrictive setting. Dr. Sharma, the state's witness, testified about the various elements of Appellant's treatment plan, including drug therapy (Tr. p. 47), a forensic review team (Tr. p. 47), recreational therapy (Tr. p. 50), and occupational therapy (Tr. p. 50). Dr. Sharma testified that Appellant's treatment team had previously granted Appellant the highest level of privileges, Level V, prior to Appellant's regression when his medication was changed in January, 1997 (Tr. p. 64). She testified that Appellant had taken about a year to return to Level IV privileges and was likely to get Level V privileges again soon after the hearing (Tr. p. 69-70). There was also substantial evidence concerning Appellant's dangerous behavior when he was changed to a new medication, Appellant's lack of cooperation, lack of motivation, continued delusions and dislike of medications.
Given the testimony of Dr. Sharma, the trial court had substantial evidence from which to determine that MPC was the least restrictive alternative for Appellant's continued hospitalization. This is especially so considering Appellant's recent psychotic relapse which demonstrates the importance of monitored drug therapy. As such, we find no abuse of discretion by the trial court.
Appellant's second assignment of error alleges:
 "RESPONDENT ROBERT WILLIAMS IS NOT GETTING APPROPRIATE TREATMENT AT MASSILLON PSYCHIATRIC CENTER AND IS BEING PREVENTIVELY DETAINED AGAINST HIS CONSTITUTIONAL RIGHTS."
Appellant argues that he is not receiving the minimum standard of treatment required by law and that this violates his right to due process, equal protection under the law and that it constitutes cruel and unusual punishment. Appellant further argues that he is being preventively detained and that his recommitment was actually ordered to fulfill the court order of his original committal that he be confined and never released.
This assignment of error lacks merit. The purpose of involuntary civil commitment is to treat the mentally ill person and to protect society from the potential danger posed by him. Inre Burton, supra, 153. A person who has been civilly committed in Ohio has certain rights to treatment: "* * * we hold that pursuant to R.C. § 5122.15(F) and the Due Process Clause, a person civilly committed to a state mental health facility has the right to receive such treatment as will provide him with a reasonable opportunity to be rehabilitated, if possible, or to improve his mental condition." In re Burton, 153.
The record demonstrates that Appellant had a treatment team attending him at MPC. The team consisted, at minimum, of a psychiatrist, a psychologist, an occupational therapist, a recreational therapist and a forensics team. Drug therapy was also a part of Appellant's treatment. Appellant's treatment enabled him gradually to gain greater privileges at MPC, and although there was a major setback in January 1997, Appellant had improved significantly up to the date of the recommitment hearing. Appellant finds fault with the treatment he has received, but there is no constitutional or statutory right to treatment of one's choice. The treatment Appellant has received has given him a reasonable opportunity for rehabilitation and, therefore, meets the Burton standard.
Appellant's characterization of his commitment at MPC as preventive detention is misplaced. If the only reason for Appellant's commitment at MPC was the potential of future dangerousness, then a due process violation would likely have occurred. Jones v. United States (1983), 463 U.S. 354, 368;Foucha v. Louisiana (1992), 504 U.S. 71, 77. The requirements of R.C. § 5122.01(B) however, demand a finding of both mental illness and present dangerousness. The United States Supreme Court has held that a verdict of not guilty by reason of insanity establishes two facts: (1) that the defendant committed the criminal act charged, and (2) that the defendant committed the criminal act because of the mental illness. Jones, 363. The fact that the defendant committed the criminal act in itself indicates dangerousness. Id., 364. The Ohio legislature crafted the commitment requirements of R.C. § 5122.01(B), "* * * to focus on a mentally ill individual's present or past dangerousness." Statev. Toledo Mental Health (February 6, 1987), Huron App. No. H-86-12 unreported. It is the fact of Appellant's past and present dangerous behavior and not ungrounded potential for future dangerous behavior, that forms the basis of his commitment at MPC.
Appellant's contention that MPG and the trial court are attempting to fulfill the 1978 order that Appellant never be released has no support on the record. On the contrary, the record shows a history of Appellant earning privileges at MPC, to the point of being allowed off ground privileges for up to eight hours. The record also shows that Appellant's treatment team has regularly requested more privileges for Appellant since the January 1997 setback and his psychiatrist expects Appellant to continue improving and receiving greater privileges.
For the foregoing reasons, we find Appellant's assignments of error to lack merit and we affirm the decision of the trial court.
DONOFRIO, J., AND VUKOVICH, J., concurs.
APPROVED:
 ______________________ CHERYL L. WAITE, JUDGE