[Cite as *State v. Santana*, 2011-Ohio-3685.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 95478

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANGEL SANTANA

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-531465

BEFORE:   Stewart, P.J., Celebrezze, J., and Rocco, J.

RELEASED AND JOURNALIZED:   July 28, 2011

**ATTORNEY FOR APPELLANT**

Michael K. Webster
800 Standard Building
1370 Ontario Street
Cleveland, OH    44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:    Lisa M. Stickan
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH    44113

MELODY J. STEWART, P.J.:

{¶ 1}   Defendant-appellant, Angel Santana, appeals from the trial court's findings in a civil commitment hearing that he is a mentally ill person subject to hospitalization by court order and that the least restrictive means of commitment is a hospital managed by Northcoast Behavioral Healthcare. Santana complains that the state failed to demonstrate that he represented a substantial risk of physical harm to himself or other members of society, and that clear and convincing evidence of present mental illness was deficient when viewed under the totality of the circumstances.   Conversely, Santana argues that he is a nondangerous individual that is not subject to confinement.

{¶ 2} On October 25, 2009, Santana displayed an accumulation of increasingly bizarre behavior and disturbing thought patterns including, but not limited to, a preoccupation with spiders; attempting to communicate via a computer with aliens as well as celebrities Howard Stern and Megan Fox; peculiar drawings and writings involving aliens, spiders, and of a sexual nature; and standing in the street while yelling at cars for no apparent reason. Santana was thereafter taken to the emergency room at MetroHealth Medical Center by his sister and stepmother who were assisted by police. He was subsequently transferred to Northcoast Behavioral Healthcare.

{¶ 3} Santana was discharged from the hospital on November 13, 2009, and shortly thereafter, arrived unannounced at the home of his stepmother. The bizarre behavior continued, and on November 19, 2009, Santana's behavior culminated in a violent and aggressive episode directed toward family members; Santana displayed forceful contact of a sexual nature directed toward his sister and also forcibly restrained his stepmother in order to halt her intervention. Santana, after leaving, attempted to reenter the now-secured premises and was arrested when police arrived on the scene.

{¶ 4} Santana's sister and stepmother stated that his actions that morning were atypical and inconsistent with his habitual personality. As a result, an indictment was filed on December 9, 2009, and Santana was charged with kidnapping with sexual motivation, gross sexual imposition, kidnapping, domestic violence, and resisting arrest. Santana waived his right to a jury and pleaded not guilty by reason of insanity.

**{¶ 5}** A bench trial commenced on June 11, 2010, with the following people testifying: Santana's sister, his stepmother, two police officers, mental health experts for both sides, and Santana. Santana's sister testified that Santana fondled her in a sexual manner while simultaneously restraining her; she also recounted his physical assault on her mother. The stepmother's testimony reiterated her struggle with Santana, stating that he aggressively restrained her by pulling her hair and also caused bruising to her arm. Testimony by one of the arresting officers revealed that Santana, after aggressively resisting arrest, was twice stunned by a taser in order to be subdued. The investigating detective stated that when he interviewed Santana three days after the incident, Santana could not recall any of the events that had taken place. Mental health expert Dr. Peter Barach, of Northcoast Behavioral Healthcare, examined Santana and decided that he was in fact afflicted by severe mental disease, but the disease did not cause him to not know that his acts were wrong. Conversely, psychologist James Karpawich conducted a forensic examination and came to the conclusion that Santana suffered from a delusional disorder and did not know the wrongfulness of his actions. When the hearing concluded, the trial court found Santana not guilty by reason of insanity.

**{¶ 6}** The trial court thereafter conducted a civil commitment hearing on June 28, 2010 in order to determine if the state could establish by clear and convincing evidence that Santana was a mentally ill person subject to civil commitment. Dr. Barach, relying upon an interview with Santana, medical records, expert reports, and Santana's personal writings, among other things, testified that under the totality of the circumstances, Santana

should be subjected to civil commitment. Santana then testified that he did not suffer from a mental health disorder, that spider bites were the likely cause of behavior he could not recall, and that he merely wished to secure employment and resume his normal life. The trial court found that Santana was subject to hospitalization and also that the least restrictive means of commitment was through the hospital operated by the Department of Mental Health.

{¶ 7} Santana contends that the state failed to demonstrate by clear and convincing evidence that he represents a substantial risk of physical harm to himself or to society. He asserts in the alternative, that the record demonstrates the expert based his opinion on harmful acts that occurred at the time of the alleged offenses, and therefore failed to offer evidence concerning present risk. In support of his claim, Santana points out that when the expert interviewed him on the day of the hearing, he told the expert that he had no desire to harm anyone. Moreover, Santana asserts that the expert is in fact uncertain if Santana suffers from continuing psychosis since he did not examine Santana's pertinent medical records that had accumulated during incarceration. Santana declares that the expert is incapable of surmising if Santana has insight into his mental condition because of the expert's lack of knowledge of his medication or prescription treatment regimen while incarcerated. Santana also points out that the expert offered no insight into his present treatment routine and, as a result, could not testify whether continued therapy would be necessary or beneficial. Finally, Santana asserts that the state has produced no adverse criminal history beyond the previous indictment and no history of drug or alcohol abuse.

{¶ 8} The state argues that Santana suffers from a psychiatric illness that is chronic in nature and is an ongoing risk to self and others since he continues to suffer from delusions. The state also contends that Santana exhibits no remorse for his past unlawful actions and continues to deny the presence of mental illness.

{¶ 9} Santana's sole assignment of error maintains that the trial court erred in finding him to be a mentally ill person subject to hospitalization.

{¶ 10} "Mental illness" is defined as "a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life." See R.C. 5122.01(A). A "[m]entally ill person subject to hospitalization by court order" means a mentally ill person who, because of the person's illness: (1) Represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm; (2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness; (3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community; or (4) Would benefit from treatment in a hospital for the person's mental illness and is in need of such treatment as

manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person." R.C. 5122.01(B).

{¶ 11} In determining whether an individual is mentally ill subject to hospitalization, the trial court considers the totality of the circumstances related to the alleged illness, including but not limited to: examining the risk of physical harm; psychiatric and medical testimony; insight; the grounds the state advances for commitment; past history of acting in conformity with the law; and any considerations of remission. See *In re Burton* (1984), 11 Ohio St.3d 147, 149, 464 N.E.2d 530. Factors to be considered include: "(1) whether, in the court's view, the individual currently represents a substantial risk of physical harm to himself or other members of society; (2) psychiatric and medical testimony as to the present mental and physical condition of the alleged incompetent; (3) whether the person has insight into his condition so that he will continue treatment as prescribed or seek professional assistance if needed; (4) the grounds upon which the state relies for the proposed commitment; (5) any past history which is relevant to establish the individual's degree of conformity to the laws, rules, regulations and values of society; and (6) if there is evidence that the person's mental illness is in a state of remission, the court must also consider the medically suggested cause and degree of the remission and the probability that the individual will continue treatment to maintain the remissive state of his illness should he be released from commitment." Id. at 149-50.

{¶ 12} When reviewing a trier of fact's finding that is premised on clear and convincing evidence, the determination must be upheld so long as there is competent,

credible evidence present by which the reviewing court can form a firm belief or conviction that the elements necessary to support such a finding have been proven. See *C.E. Morris v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 376 N.E.2d 578, syllabus; *Cross v. Ledford* (1954), 161 Ohio St. 469, 120 N.E.2d 118, at paragraph three of the syllabus.

{¶ 13} The trial court is permitted to consider all relevant evidence, including psychiatric reports and any "history of the person that is relevant to the person's ability to conform to the law." R.C. 2945.40(D). If, after such a hearing, the trial court finds by clear and convincing evidence that an individual is mentally ill and subject to hospitalization, the court is directed to order appropriate commitment in "the least restrictive commitment alternative available that is consistent with public safety and the welfare of the person." R.C. 2945.40(F).

{¶ 14} "[A]n individual whose mental illness is in a state of remission is subject to hospitalization pursuant to R.C. 5122.01(B) if there is a substantial likelihood that his freedom will result in physical harm to himself or other members of society." *In re Burton,* at 150. Moreover, "a person subject to hospitalization must represent a substantial risk of physical harm to himself or other members of society at the time of the commitment hearing. The individual's present mental state must be evaluated upon current or recent behavior as well as prior dangerous propensities of the person." Id. at 149.

{¶ 15} Although Santana testified that he does not have any thoughts or desires to hurt himself or others, the totality of the facts and circumstances on the record are nevertheless competent and sufficiently credible to establish that he poses a substantial risk of physical harm to himself and to other members of society. Santana has been diagnosed as suffering from a severe and chronic form of paranoid schizophrenia. At the civil commitment hearing, Santana refuted this diagnosis and denied the presence of any mental illness. The court apparently found that Santana does not demonstrate the requisite "*** insight into his condition so that he will continue treatment as prescribed or seek professional assistance if needed." *In re Burton,* at 149-50.

{¶ 16} Expert testimony concerning Santana's present mental condition establishes that he currently shows no remorse and does not comprehend the harmful nature of his past acts. The trial court could reasonably find, in fact, that his previous unprovoked attacks on family members make future behavior unpredictable. Furthermore, the evidence presented supports a finding that Santana poses a risk of harming others based on persistent ongoing delusions. Santana's history of psychiatric illness is indicative of a chronic affliction; this, in combination with his noncompliance with taking prescribed medications, makes his future behavioral inclinations an uncertainty at best.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
KENNETH A. ROCCO, J., CONCUR