[Cite as *In re Bailey*, 2025-Ohio-3091.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

IN THE MATTER OF THERLO BAILEY    :
JR., ALLEGED TO BE A MENTALLY    :   C.A. No. 30427
ILL PERSON    :
   :   Trial Court Case No. 2024 MI 00597
   :
   :   (Appeal from Common Pleas Court-
   :   Probate Division)
   :
   :   **FINAL JUDGMENT ENTRY &**
   :   **OPINION**

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on August 29, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

RONALD C. LEWIS, JUDGE

TUCKER, J., and HANSEMAN, J., concur.

**OPINION**

MONTGOMERY C.A. No. 30427

JOHN A. FISCHER, Attorney for Appellant
BEVERLY STEWART, Attorney for Appellee

LEWIS, J.

{¶ 1} Therlo Bailey, Jr., alleged to be a mentally ill person, appeals from an order of the Probate Division of the Montgomery County Court of Common Pleas, which committed him to involuntary treatment at Kettering Behavioral Medicine Center after overruling his objections to a magistrate's decision. For the following reasons, we affirm the judgment of the trial court.

I.      Course of Proceedings

{¶ 2} On September 13, 2024, Dr. Otto Dueno filed an affidavit of mental illness in the probate court. According to the affidavit, Bailey "[r]epresents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence of being unable to provide for and of not providing for basic physical needs because of mental illness and that appropriate provision for such needs cannot be made immediately available in the community[.]." Dr. Dueno based his affidavit on a September 13, 2024 examination of Bailey. A purported copy of a September 12, 2024 "Application for Emergency Admission" was also filed that day, which included a "Statement of Belief" and a "Statement of Observation by Psychiatrist, Licensed Physician, or Licensed Clinical Psychologist, if Applicable." The Statement of Belief was signed on September 12, 2024, by a physician who worked for "Kettering Health Dayton," and the Statement of Observation was signed on September 13, 2024, by a "psychiatry resident" and Dr. Dueno.

{¶ 3} The trial court appointed counsel for Bailey. A hearing was held before a magistrate via videoconference on September 17, 2024. The record before us does not contain a written copy of the transcript of the hearing. Following the hearing, the magistrate found, by clear and convincing evidence, that Bailey was a person with mental illness subject to court order under R.C. 5122.01(B) and "[w]ould benefit from treatment in a hospital for his mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to the substantial rights of others or self." On that same date, the magistrate granted a motion for forced medication or other forced medical treatment.

{¶ 4} On September 27, 2024, Bailey requested that a digital transfer copy of the electronically-recorded hearing before the magistrate be prepared. On September 30, 2024, Bailey filed objections to the magistrate's decision. According to the objections, the magistrate "incorrectly overruled [Bailey's] objection to the legal sufficiency of the emergency admission slip (i.e., pink slip). [Bailey's] objection was based upon the absence of any specific facts and a failure to indicate how [Bailey] was taken into custody in the pink slip." Bailey contended that the magistrate's reliance at the hearing on the Statement of Observation "to salvage a legally insufficient pink slip [was] misplaced." Bailey provided cites to the digital transcript in support of his objections.

{¶ 5} On October 8, 2024, a hearing was held on Bailey's objections to the magistrate's decision. A copy of the written transcript from the October 8, 2024 hearing is in the record. At the hearing, the parties summarized their arguments relating to whether the information stated on the pink slip was sufficient to support taking Bailey into custody.

{¶ 6} On November 21, 2024, the trial court overruled the objections to the magistrate's decision and adopted the magistrate's decision as the order of the court.

Bailey filed a timely notice of appeal from the trial court's order. On January 27, 2025, however, we dismissed the appeal for lack of a final appealable order because the trial court's November 21, 2024 order "did not set forth the outcome of the dispute and the remedy provided, it merely adopted the magistrate's decision as its own."

{¶ 7} In March 2025, the trial court issued an amended decision overruling Bailey's objections to the magistrate's decision. The court found that "the underlying Pink Slip, although not perfect, states the 'circumstances' as required on the Pink Slip." Decision (Mar. 18, 2025),[1] p. 13. According to the trial court, "[t]he drafting of this Pink Slip was completed based on the circumstances and thus supports a finding of probable cause to believe that the person is a person with a mental illness subject to court order." *Id.* The court went on to find that "[e]ven if the Statement of Belief is read to be insufficient in this case, the Pink Slip's Statement of Observation supplements that deficiency." *Id.* The court ordered that Bailey be committed to the Alcohol, Drug, and Mental Health Services (ADAMHS) Board of Montgomery County with inpatient treatment at Kettering Behavior Medicine Center for a period not to exceed 90 days from the order. Bailey filed a timely notice of appeal from the trial court's order.

II.     The Absence of a Written Transcript of the Hearing Before the Magistrate Requires Us to Affirm the Trial Court's Decision Overruling the Objections to the Magistrate's Decision

{¶ 8} Bailey's sole assignment of error states:

The Trial Court Erred by Finding that the Pink Slip Sufficiently Detailed

---

[1] This decision was signed and docketed on March 18, 2025, but it was file-stamped on March 28, 2025.

the Circumstances under which Mr. Bailey was Taken into Custody or how Mr. Bailey Posed a Substantial Risk of Physical Harm to Himself or Others.

{¶ 9} "When a person faces commitment to a mental hospital against his or her will, the individual's right against involuntary confinement depriving him or her of liberty must be balanced against the state's interest in committing those who are mentally ill.  It is well recognized that an involuntary civil commitment constitutes a significant deprivation of liberty requiring due-process protection."  *In re Miller*, 63 Ohio St.3d 99, 101 (1992), citing *Addington v. Texas*, 441 U.S. 418, 425 (1979), and *In re Burton*, 11 Ohio St.3d 147, 151 (1984).  "R.C. Chapter 5122 sets forth specific procedures to be followed when a person is committed to a mental hospital, whether voluntarily or involuntarily."  *Id.*

{¶ 10} "R.C. Chapter 5122 contemplates that either of two procedures may be followed when involuntary commitment is sought.  One procedure is an emergency hospitalization pursuant to guidelines basically set forth in R.C. 5122.10.  The other procedure is a non-emergency hospitalization pursuant to R.C. 5122.11."  *Id.*  "Each procedure requires specific due-process protections."  *Id.*

{¶ 11} "The factor that distinguishes an emergency involuntary commitment from a non-emergency one is the method by which the procedure is initiated."  *Id.*  "An emergency commitment is initiated by a person being taken into custody without first being afforded a hearing."  *Id.*, citing R.C. 5122.10.  "A non-emergency commitment, on the other hand, is commenced by the filing of an affidavit alleging facts to indicate probable cause to believe that the person is mentally ill subject to court-ordered hospitalization, thereby invoking the jurisdiction of the court."  *Id.* at 101.  "If the affidavit is sufficient to indicate probable cause, the court must either issue a temporary order of detention or set the matter for hearing."  *Id.*, citing R.C. 5122.11.

{¶ 12} It appears Bailey's involuntary commitment was initiated by a physician pursuant to R.C. 5122.10 rather than by an affidavit pursuant to R.C. 5122.11. Therefore, our consideration of Bailey's challenge to his commitment begins with R.C. 5122.10.

{¶ 13} R.C. 5122.10 states that a licensed physician may take a person into custody and may immediately transport the person to a hospital if the physician "has reason to believe that a person is a person with a mental illness subject to court order and represents a substantial risk of physical harm to self or others if allowed to remain at liberty pending examination[.]" R.C. 5122.10(A)(1)(b). Further, R.C. 5122.10(B) requires that:

A written statement shall be given to the hospital by the individual authorized under division (A)(1) or (2) of this section to transport the person. The statement shall specify the circumstances under which such person was taken into custody and the reasons for the belief that the person is a person with a mental illness subject to court order and represents a substantial risk of physical harm to self or others if allowed to remain at liberty pending examination. This statement shall be made available to the respondent or the respondent's attorney upon request of either.

{¶ 14} According to the Ohio Supreme Court, "the written statement serves as a type of affidavit, to ensure that at least a minimal level of probable cause exists that court-ordered hospitalization is necessary before a person can be involuntarily committed." *In re Miller*, 63 Ohio St.3d at 102-103. "The written statement given to a hospital when a person is taken into custody pursuant to R.C. 5122.10 is a requirement for the initiation of an emergency involuntary commitment." *Id.* at paragraph one of the syllabus. "The statement ensures the existence of some probable cause to support the involuntary commitment of a person who may be mentally ill and in need of court-ordered

hospitalization." *Id.* If no such written statement is given to the hospital, then due process was not afforded to the person at the early stage of his commitment process. *Id.* at 103.

{¶ 15} A purported copy of a September 12, 2024 written statement was filed with the trial court on September 13, 2024. The written statement was entitled "APPLICATION FOR EMERGENCY ADMISSION." In the first section of the statement, a physician "checked" the box next to the following language: "Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community[.]" Under the "STATEMENT OF BELIEF" section of the written statement, the physician stated: "Patient with history of schizophrenia and is experiencing delusional thoughts and has poor insight into his clinical condition or the risks of him not receiving medical treatment. Patient cannot reiterate the risks of not receiving medical treatment given his current condition."

{¶ 16} Bailey argues that probable cause was lacking at the moment he was detained, because "[t]he Pink Slip does not describe any circumstances under which he was taken into custody and fails to show how Mr. Bailey represented a substantial risk of physical harm to himself or others if allowed to remain at liberty." Appellant's Brief, p. 4. According to Bailey, "[b]ecause of this failure to state these circumstances, the Pink Slip filed with the trial court to initiate this matter was defective. And, as a result, the trial court lacked jurisdiction to entertain and adjudicate this case." *Id.* In short, the "Pink Slip was too conclusory to establish probable cause to take him into custody[.]" *Id.* at 6. Bailey also contends that the trial court erred by relying on the September 13, 2024 Statement of Observation to establish the requisite probable cause to take Bailey into custody on

September 12, 2024. *Id.* at 9.

{¶ 17} Appellee Montgomery County ADAMHS Board responds that Kettering Hospital complied with all aspects of R.C. 5122.10. Appellee's Brief, p. 5. ADAMHS contends that the September 12, 2024 Statement of Belief signed by an emergency room physician was sufficient to satisfy the definition of "person with a mental illness subject to court order" in R.C. 5122.01(B)(3). Further, ADAMHS argues that a trial court's dismissal of a civil commitment case "based on the determination that the pink slip is insufficient to establish probable cause after the patients have been held for the seventy-hours and after an Affidavit of Mental Illness has been filed" would not be consistent with R.C. Chapter 5122. Appellee's Brief, p. 12.

{¶ 18} Our ability to review Bailey's assignment of error is affected by the fact that our record does not contain a copy of the transcript of the September 17, 2024 hearing before the magistrate. The probate court's local rules set forth the process that must be followed to obtain a written transcript of the proceedings. P.C.R. 11.1(D) states:

Transcripts. A written transcript used for appeal, objection to a magistrate's decision, or other Court proceeding must be prepared in accordance with App.R. 9(A) of the Rules of Appellate Procedure. This Court contracts with a third-party vendor for written transcripts. A written transcript shall be obtained by:

(1) Filing and serving a praecipe with the Clerk requesting that a specific proceeding be transcribed;

(2) The Court will then serve a copy of the request upon the third-party vendor (currently eScribers) and provide the vendor a digital copy of the proceedings;

(3) The third-party vendor will contact the requesting party to take payment

and make additional arrangements; and

(4) Once the third-party vendor delivers a copy of the written transcript to the requesting party, the party may file it with the Court.

(5) Once transcribed, any other party may request a copy of the transcript directly from the third-party vendor or the Court. Upon payment of the copy rate by the requesting party, the vendor or Court will forward a copy of the transcript directly to the party.

{¶ 19} Based on our review of the record, it is unclear whether Bailey followed all of the steps in the probate court's local rules to obtain and file a copy of the written transcript of the September 17, 2024 hearing. App.R. 9(B)(1) states that it is the appellant's duty to order the transcript. "Absent a transcript of the trial or a proper recreation of that evidence, we cannot speculate what the testimony was at trial, and we are constrained to presume the regularity of the proceedings below unless the limited record for our review affirmatively demonstrates error." *Albritton v. White*, 2011-Ohio-3499, ¶ 15 (2d Dist.), citing *Banks v. Regan*, 2008-Ohio-188, ¶ 2 (2d Dist.), and *State v. Like*, 2008-Ohio-1873, ¶ 33 (2d Dist.). *Accord Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980) ("When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.").

{¶ 20} Our task in this appeal is to review the trial court's decision to overrule Bailey's objections to the magistrate's decision. Without a written transcript of the hearing before the magistrate to review, we could only speculate as to what evidence was presented at the magistrate's hearing and whether this evidence met the due process requirements contained in R.C. 5122.10. Further, the limited record before us does not affirmatively

demonstrate a prejudicial error committed by the trial court.  Therefore, we are constrained to presume the regularity of the proceedings below.

{¶ 21} Bailey's assignment of error is overruled.


III.     Conclusion

{¶ 22} Having overruled the assignment of error, we affirm the judgment of the trial court.

. . . . . . . . . . . .

TUCKER, J., and HANSEMAN, J., concur.