OPINION
{¶ 1} Respondent-appellant, T.B., appeals from an amended judgment entry of commitment dated May 17, 2006 of the Franklin County Court of Common Pleas, Probate Division, that overruled appellant's objections to the magistrate's April 7, 2006 decision and adopted the magistrate's decision. The magistrate found appellant to be a mentally ill person subject to court-ordered hospitalization. Because the trial court's judgment is supported by competent, credible evidence going to all the essential elements of the case, we affirm.
 {¶ 2} On January 25, 2006, a Franklin County Grand Jury indicted appellant on 16 counts of retaliation, extortion, and telephone harassment in case No. 06CR-01-0665. The indictment alleges that appellant engaged in unlawful conduct toward a sitting common pleas court judge who was engaged in the discharge of her official duties. Following a competency assessment, the trial court found, pursuant to R.C. 2945.38, that appellant was incompetent to stand trial in case No. 06CR-01-0665 and that there was not a substantial probability that appellant could be restored to competency within the timeframe required by law. The trial court also filed an affidavit in the Franklin County Probate Court pursuant to R.C. 2945.38(B)(2) for the civil commitment of appellant, alleging that appellant is a mentally ill person subject to hospitalization by court order.
 {¶ 3} A probate court magistrate conducted a civil commitment hearing on April 7, 2006 (case No. MI-14604). Based upon evidence presented during the hearing, the magistrate found that appellant was mentally ill and subject to court-ordered hospitalization under R.C. 5122.01(B)(2) and 5122.01(B)(4). Appellant timely filed objections to the magistrate's decision. The probate court overruled appellant's objections, adopted the magistrate's decision, and found by clear and convincing evidence that appellant is a mentally ill person subject to court-ordered hospitalization pursuant to R.C. 5122.01(B)(2) and 5122.01(B)(4).
 {¶ 4} On appeal, appellant assigns the following error:
THE TRIAL COURT'S DECISION TO COMMIT THE APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 5} Preliminarily, we recognize that an involuntary civil commitment of a person is a significant deprivation of liberty and requires due process protection. Addington v. Texas (1979),441 U.S. 418, 425, 99 S.Ct. 1804; In re Burton (1984),11 Ohio St.3d 147, 151; In Re Miller (1992), 63 Ohio St.3d 99, 101. "R.C. Chapter 5122 sets forth specific procedures to be followed when a person is committed to a mental hospital, whether voluntarily or involuntarily. When commitment is against a person's will, it is particularly important that the statutory scheme be followed, so that the patient's due-process rights receive adequate protection." Id. Moreover, when a person faces commitment to a mental hospital against his or her will, the individual's right against involuntary confinement depriving him or her of liberty must be balanced against the state's interest in committing those who are mentally ill and who pose a continuing risk to society or to themselves. Id.; State v.Welch (1997), 125 Ohio App.3d 49, 51-52.
 {¶ 6} Confining mentally ill persons who are adjudged to be a risk to society or to themselves serves to protect society while at the same time provides treatment in the hope that one day those individuals will be cured. However, the state must meet a heavy burden to show that an individual suffers from a mental illness and must be confined against his or her will. Id. at 52.
 {¶ 7} Under Ohio law there is a three-part test for an involuntary commitment. Each part of this test must be established by clear and convincing evidence. Id. at 53. The first two parts of the test are found in R.C. 5122.01(A). First, there must be a substantial disorder of thought, mood, perception, orientation, or memory. Second, the substantial disorder of thought, mood, perception, orientation, or memory must grossly impair judgment, behavior, capacity to recognize reality, or the ability to meet the ordinary demands of life. Id. at 52; R.C. 5122.01(A).
 {¶ 8} The third part of the test requires that the mentally ill person be hospitalized for one of the reasons set forth in R.C. 5122.01(B). Id. This statute provides:
(B) "Mentally ill person subject to hospitalization by court order" means a mentally ill person who, because of the person's illness:
(1) Represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;
(2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;
(3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community; or
(4) Would benefit from treatment in a hospital for the person's mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person.
 {¶ 9} Under R.C. 5122.01(B), a person subject to hospitalization must represent a substantial risk of physical harm to himself or others at the time of the commitment hearing. "The individual's present mental state must be evaluated upon current or recent behavior as well as prior dangerous propensities of the person." Burton, supra, at 149. The General Assembly has provided the trial court with broad discretion to review the individual's past history in order to make a well-informed determination of his or her present mental condition. Id. Consistent with this broad discretion, the Supreme Court of Ohio has instructed trial courts to apply a "totality of the circumstances" test in determining whether a person is subject to hospitalization under R.C. 5122.01(B). This test balances the individual's right against involuntary confinement in deprivation of his or her liberty, and the state's interest in committing the emotionally disturbed. Id. Factors which the trial court should consider in a commitment hearing include, but are not limited to: (1) whether, in the court's view, the individual currently represents a substantial risk of physical harm to himself or other members of society; (2) psychiatric and medical testimony as to the present mental and physical condition of the alleged incompetent; (3) whether the person has insight into his condition so that he will continue treatment as prescribed or seek professional assistance if needed; (4) the grounds upon which the state relies for the proposed commitment; (5) any past history which is relevant to establish the individual's degree of conformity to laws, rules, regulations, and values of society; and (6) if there is evidence that the person's mental illness is in a state of remission, the court must also consider the medically-suggested cause and degree of the remission and the probability that the individual will continue treatment to maintain the remissive state of his illness should he be released from commitment. The trial court may also consider other relevant evidence in making an informed decision about the person's present mental condition.
 {¶ 10} Appellant does not contest the trial court's finding regarding the first two parts of the statutory test (i.e., that appellant has a substantial mental disorder that grossly impairs his functioning). However, appellant contends that the trial court's finding that appellant poses a present or imminent danger to others under R.C. 5122.01(B)(2) and 5122.01(B)(4) was against the manifest weight of the evidence. We disagree.
 {¶ 11} It is well-established that "judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." SecurityPacific Natl. Bank v. Roulette (1986), 24 Ohio St.3d 17, 20, citing C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279. Here, there is competent, credible evidence supporting the trial court's finding under a clear and convincing standard, that appellant is a mentally ill person who because of his illness, represents a substantial risk of physical harm to others under R.C. 5122.01(B)(2) and who is in need of hospital treatment as manifested by evidence of behavior that creates a grave and imminent risk to the substantial rights of others under R.C.5122.01(B)(4).
 {¶ 12} William Bates, M.D., was the only witness who testified at the commitment hearing. Dr. Bates is a psychiatrist practicing in Columbus, Ohio. Appellant, through his counsel, stipulated to both Dr. Bates' qualifications as well as to the authenticity and admissibility of his medical records. Dr. Bates testified that he examined appellant and reviewed appellant's medical chart for purposes of the hearing. Dr. Bates further stated that he has examined appellant on a number of occasions in the past and was familiar with appellant's history and pathology. On direct examination, Dr. Bates testified as follows:
Q. Okay, good. Doctor, as a result of that, are you able this morning to give psychiatric testimony, to a reasonable degree of medical certainty, concerning [T.B.'s] present psychiatric condition?
A. Yes.
Q. Would you relate your findings to the Court, Doctor.
A. The patient has a relatively uncommon disorder, very longstanding. It's a delusional disorder, characterized primarily by fixed false beliefs, which are not particularly bizarre. Like a bizarre belief would be belief that there are aliens living in the cupboard or something. In his case his delusions are a little more concrete and specifiable. They are relatively unshakable.
They consist of two types. One is a persecutory type, in which he feels that the system, in particular a local judge, and other legal officials are in some kind of a conspiracy to basically destroy his life.
He also has erotomanic delusions in which he feels passionately in love with one of these individuals. So he fluctuates between hating her and giving threats, talking about her death, when she's going to heaven, such things as that. In the past, he's made very explicit statements of maiming, killing, destroying, torturing this woman.
Lately, the threats are a little more vague, but it's obvious that they connect to the thoughts that he had in the past. He's just a little more subtle in expressing them, I think.
So he has a delusional disorder, erotomanic and persecutory type.
Q. And, Doctor, is that a substantial disorder of thought, in your professional opinion, and perception?
A. It's so substantial that it dominates his waking life.
Q. Okay. And it's obviously affecting his judgment and behavior at this time?
A. About all he can do is think about this and write letters and make phone calls to those people that he thinks are some how persecuting him or that he needs to be married to, hugging, scratching her back and so forth. Very erotic kinds of statements that he's making to her.
Q. And there is no question in your mind, Doctor, that these threats are specifically geared toward the people in that justice system that he feels wronged him?
A. He continually mentions two specific people: one, a local judge; other, a prominent attorney.
Q. Divorce lawyer, attorney that was involved in the case.
Doctor, did you find a substantial disorder in any of the other areas, like perception, memory, orientation, or is it primarily a thought disorder?
A. It's a thought disorder. It's a very, very intense thought disorder. He doesn't appear to have a particular perceptual disturbance, and he's not hearing voices. He does not appear to have a memory impairment; he remembers things quite well. He does not have mood liability or anything; his mood is rather stable.
Q. And he's of average intelligence, of course, is he not?
A. I believe he is.
Q. Okay. Doctor, as a result of the description which you gave us, do you have an opinion as to whether or not [T.B.] represents a substantial risk of harm to others as a direct result of his mental illness?
A. I think on the basis of the intensity of his feelings, positive and negative, that he is very unpredictable and represents an unpredictable and very distressing degree of danger to others.
And he tells — it's like in one of these movies you'd see with stalkers: He tells the judge, "I know where you live. I know where you park your car. I know where you are every moment. I can find you if I want." And it must be very intimidating for her.
(Tr. 10-13.)
 {¶ 13} Appellant argues that there is nothing in Dr. Bates' testimony that indicates appellant poses a present risk of harm to others. More specifically, appellant contends that Dr. Bates' use of the word "unpredictable" in describing the danger appellant poses indicates the absence of evidence that appellant presently poses a substantial danger to others. We disagree. On direct examination, Dr. Bates was responding to questions about appellant's "present psychiatric condition." In this regard, Dr. Bates expressly stated that appellant presented a "very distressing degree of danger to others." We find that the only reasonable interpretation of this statement is that at the time he testified, Dr. Bates believed appellant presented a substantial risk of harm to others. Dr. Bates' use of the word "unpredictable" refers to the difficulty in determining precisely when appellant might act on his delusional beliefs — not that appellant poses no present danger.
 {¶ 14} This interpretation of Dr. Bates' testimony on direct examination is bolstered by his later testimony on cross-examination.
Q. You note also a change in the nature of his statements over time. Does that track with a decrease in presentable danger over time as well?
A. I don't think so. I think it just indicates a refinement in his understanding of what might and might not get him into trouble. For instance, one time —
* * *
A. At one point in the past he made graphic statements in letters about putting her on a butcher block and chopping her open with a hatchet and masturbating into the cavity and things like that.
And when I saw him some years after that, he said that he had learned not to say things of such an aggressive nature about her, but that he was not going to get her to change — he wants her to change her mind about a ruling she made probably 20 years ago, and he felt that perhaps being aggressive in his tone was not the way to go, and that's when he started adopting a more "I love you" type of approach, thinking that that way he would get her on his side.
And so I think the danger is still there, regardless of the words he's using, he's just taking a different approach.
(Tr. 17-18.)
 {¶ 15} Again, we find that the only reasonable interpretation of Dr. Bates' testimony is that even though appellant's threats have become more subtle, Dr. Bates believes that appellant continues to pose a substantial risk of physical harm to others.
 {¶ 16} Because there is competent, credible evidence for the trial court to find, under a clear and convincing evidence standard, that appellant has a substantial mental disorder that grossly impairs his functioning and that appellant should be hospitalized for the reasons set forth in R.C. 5122.01(B)(2) and5122.01(B)(4), we overrule appellant's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.
Judgment affirmed.
Klatt, P.J., McGrath and Travis, JJ., concur.