DECISION
{¶ 1} Respondent-appellant, "K.W." ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, Probate Division, which found that appellant was a mentally ill person subject to hospitalization and granted to petitioner-appellee, the Franklin County Alcohol, Drug Addiction and Mental Health Board ("appellee"), permission to medicate appellant against her will. For the following reasons, we affirm.
 {¶ 2} On June 7, 2006, Dr. Marion Sherman filed in the trial court an affidavit of mental illness and an application for forced psychotropic medication regarding appellant. Dr. Sherman's affidavit stated that appellant had been diagnosed as having a delusional disorder. She had been transferred to a mental health facility from a correctional institution, where she had been incarcerated for several months on charges of threatening President Bush. The affidavit stated that she had refused all treatment, would not speak to anyone, and had refused to eat since her admission on June 2.
 {¶ 3} On June 14, 2006, a hearing was held before a magistrate of the trial court. Appellant was represented by counsel at the hearing, but did not attend. Following the hearing, the magistrate found that appellant was a mentally ill person subject to hospitalization and granted appellee's application for forced medication. Immediately following the hearing, appellant filed objections to the magistrate's decision. In her objections, appellant argued that the magistrate erred by overruling her motion for continuance of the forced medication hearing and that the evidence presented at the hearing was not sufficient to meet the statutory requirements for hospitalization.
 {¶ 4} On July 11, 2006, the trial court held a hearing on appellant's objections. On July 12, 2006, the trial court issued an entry, which overruled appellant's objections and adopted the magistrate's June 14, 2006 decision.
 {¶ 5} On June 14, 2006, appellant filed a notice of appeal. She raises a single assignment of error:
THE TRIAL COURT'S DECISION TO COMMIT THE APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 6} By her sole assignment of error, appellant asserts that the trial court's finding that appellant is a mentally ill person subject to hospitalization under R.C. 5122.01 is against the manifest weight of the evidence. We will not reverse such a finding as against the manifest weight of the evidence if it is "supported by some competent, credible evidence going to all the essential elements of the case[.]" C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279.
 {¶ 7} As an initial matter, we recognize that an involuntary commitment of an individual is a significant deprivation of liberty. Addington v. Texas (1979), 441 U.S. 418, 425; In reBurton (1984), 11 Ohio St.3d 147, 151; In re Miller (1992),63 Ohio St.3d 99, 101. R.C. Chapter 5122 prescribes the procedures to be followed when a person is committed to a mental hospital, whether that commitment is voluntary or involuntary. When the commitment is involuntary, "it is particularly important that the statutory scheme be followed, so that the patient's due-process rights receive adequate protection." Miller at 101.
 {¶ 8} "[T]he individual's right against involuntary confinement depriving him or her of liberty must be balanced against the state's interest in committing those who are mentally ill and who pose a continuing risk to society or to themselves."In re T.B., Franklin App. No. 06AP-477, 2006-Ohio-3452 ("In reT.B. I"), citing Miller. While confining a mentally ill person found to be a risk to herself or society both protects society and provides help for the illness, "the state nonetheless must meet a heavy burden to show that the individual in fact suffers from a mental illness and must be confined in order to treat the illness." In re T.B., Franklin App. No. 06-769, 2006-Ohio-4789
("In re T.B. II").
 {¶ 9} Ohio law establishes a three-prong test for an involuntary commitment, and each part must be met by clear and convincing evidence. In re T.B. I, citing State v. Welch
(1997), 125 Ohio App.3d 49. First, there must be a substantial disorder of thought, mood, perception, orientation or memory. Id.; R.C. 5122.01(A). Second, that disorder must grossly impair judgment, behavior, the capacity to recognize reality or the ability to meet the ordinary demands of life. In re T.B. I; R.C. 5122.01(A). And third, the evidence must support hospitalization under one or more of the bases provided in R.C.5122.01(B). In re T.B.I.
 {¶ 10} The third prong of the test — that is, whether the trial court's finding that appellant is a mentally ill person subject to hospitalization by court order, was supported by competent, credible evidence that fulfills one or more of the R.C. 5122.01(B) requirements — is at issue here. R.C. 5122.01(B) provides:
"Mentally ill person subject to hospitalization by court order" means a mentally ill person who, because of the person's illness:
(1) Represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;
(2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;
(3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community; or
(4) Would benefit from treatment in a hospital for the person's mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person.
 {¶ 11} Here, the trial court found appellant to be a mentally ill person subject to court-ordered hospitalization under R.C.5122.01(B)(3) and (B)(4). Under R.C. 5122.01(B)(3), appellant could be subject to hospitalization if she represents a substantial and immediate risk of serious physical impairment or injury to herself as manifested by evidence that, because of her mental illness, she is unable to provide for, and is not providing for, her "basic physical needs" and that appropriate provision for those needs could not have been immediately available in the community. Appellant argues that the evidence was insufficient to show that appellant was not providing for her basic physical needs because the evidence failed to show which of her physical needs were not being met.
 {¶ 12} In support of her argument, appellant directs us to the following exchange between her counsel and Dr. William Bates at the hearing before the magistrate:
Q. You also testified that her basic needs are not being met. And what is it specifically about her disorder that causes these needs to go unmet?
A. Well, for one thing, she has felt that her food was being poisoned and caused rashes on her body and was refusing to eat.
Q. So the basic need not being met is she's not eating?
A. That's been a problem.
Q. Are there any other needs that are not being met?
A. All of her — basic needs to me mean your ability to conform your behavior to the basic norms of society so that you can live in the community, and she can't do that.
(Tr. at 10.)
 {¶ 13} This testimony, appellant argues, is insufficient to show that she is unable to provide for, and is not providing for, her basic physical needs. However, we disagree with appellant's characterization of the relevant evidence, which we conclude supports the trial court's finding that appellant cannot provide for her own basic physical needs and that provision for her needs is not immediately available in the community.
 {¶ 14} In his affidavit of mental illness, Dr. Sherman stated:
[K.W.] has a diagnosis of Delusional Disorder [and] was admitted from [Franklin County Correctional Center] where she has been incarcerated for the past several month[s] on Federal charges of threatening President Bush. She remains delusional, stating that she is in the "witness protection program and has diplomatic immunity[."] She is refusing to eat and believes the food and water make her break out. She has not eaten since her admission on 6/2/06. She has accepted only coffee. She is refusing all treatment and will not talk to anyone. She has been hostile, agitated, angry and menacing toward others since her admission.
 {¶ 15} Before the magistrate, Dr. Bates testified that appellant has a longstanding delusional disorder, which has resulted in numerous psychiatric hospitalizations and incarcerations. He testified:
* * * She, for a while, thought that her food was being poisoned and wasn't eating appropriately. As a result of numerous threats that she made against the President of the United States and other officials, she was incarcerated over most of the last year.
Recently, she was in, I believe it was the Franklin County jail where her psychosis re-emerged very severely. She was agitated, acting bizarrely, refusing to talk, refusing to take care of herself, thought that her food was poisoned, and she was transferred to this facility where at this point she remains uncooperative with treatment.
(Tr. at 7-8.)
 {¶ 16} When asked whether appellant represents a substantial risk of harm to herself or others, Dr. Bates stated:
Well, she's made threats against the President to the point that she's been incarcerated for over most of the past year. She's really not able to take care of her basic needs, and she's very hostile in her attitude towards staff and others in the facility here.
(Tr. at 8.)
 {¶ 17} As for her prognosis, Dr. Bates stated: "The prognosis is poor. She has a history of refusing treatment, only takes it when it's essentially court-ordered. And if she's released, discontinues treatment." (Tr. at 9.)
 {¶ 18} We conclude that there was competent, credible evidence in support of the trial court's finding that appellant is a mentally ill person subject to hospitalization under R.C.5122.01(B)(3). Specifically, Dr. Sherman's application indicated that, as a result of her delusions, appellant had refused food and water — that refusal lasting five days at that point — and was accepting only coffee. She also had refused all treatment. In addition, Dr. Bates testified that appellant has refused to care for herself and is not able to care for herself. She was refusing to eat because she believed her food was poisoned and caused rashes on her body. Finally, Dr. Bates testified that hospitalization was the least restrictive treatment alternative at this time and that, without treatment, appellant's prognosis was poor. Appellant presented no contrary evidence. Thus, the trial court's finding regarding R.C. 5122.01(B)(3) was not against the manifest weight of the evidence. Appellant having made no arguments regarding the trial court's conclusion that hospitalization was also appropriate under R.C. 5122.01(B)(4), we overrule appellant's assignment of error.
 {¶ 19} Having overruled appellant's sole assignment of error, we affirm the decision of the Franklin County Court of Common Pleas, Probate Division.
Judgment affirmed.
French, Bryant, and McGrath, JJ., concur.