[Cite as *In re E.S.*, 2023-Ohio-382.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

In the Matter of:                           :

[E.S.]                                      :           No. 22AP-366
                                                        (Probate No. MI-35677)
                    Appellant.              :
                                                        (REGULAR CALENDAR)
                                            :

_____

D E C I S I O N

Rendered on February 9, 2023

_____

**On brief:** *Steven McGann*, for appellant. **Argued:** *Steven McGann*.

**On brief:** *J. Michael Evans*, for appellee **Argued:** *J. Michael Evans*.

_____

APPEAL from the Franklin County Court of Common Pleas,
Probate Division

LUPER SCHUSTER, J.

{¶ 1} Appellant, E.S., appeals from a judgment entry of the Franklin County Court of Common Pleas, Probate Division, finding appellant to be a mentally ill person subject to involuntary civil commitment. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} On May 16, 2022, the chief clinical officer of Twin Valley Behavioral Healthcare ("TVBH") submitted an affidavit of mental illness to the probate court regarding appellant. In the affidavit, Dr. Andrew Savageau averred that appellant was a mentally ill person subject to court order under the criteria set forth in R.C. Chapter 5122. Dr. Savageau set forth the facts supporting his assertion in the narrative portion of the affidavit, stating:

Patient is a 49-year-old white male admitted to TVBH on 05/13/2022 with a pink slip dated 05/11/22 due to symptoms of psychosis. Per the preadmission paperwork, patient was taken to Knox Community Hospital by family due to concerns of worsening bizarre behavior. Per the report, patient is paranoid and delusional. He reportedly barricaded himself in the house thinking people were out to get him and believed there were secret tunnels in his home where people could hide. He has persecutory beliefs about his father, believes his father wants to keep him incarcerated. Report indicates that he was sleeping in his car for the past ten days due[] to increased paranoia. Per his father, patient stopped taking his medication and thought the only thing he needed was marijuana. Patient has a documented substance use and a positive tox screen for cannabis. Pt. identified using "Over-the-counter THC vape. That's what I do now." He also reports that he has a history of using Adderall but identifies it is too expensive on the street to continue use. Pt. represents a substantial risk of harm to himself and others and would benefit from treatment to ensure the safety of patient and others.

(Dr. Savageau Aff. at 2.)

{¶ 3} Also on May 16, 2022, Licensed Social Worker Elenice Gomes filed a supplemental case history of mental illness. Gomes noted that appellant had a previous hospitalization at TVBH in 2018 for up to 60 days for competency restoration. Additionally, Gomes noted appellant's history of alcohol and cannabis use dates back to age 16.

{¶ 4} A probate court magistrate found the affidavit satisfied R.C. 5122.11 and ordered, on May 16, 2022, appellant to be detained at Mental Health and Recovery for Licking and Knox Counties ("MHR") with placement at TVBH. The probate court scheduled a full hearing on the affidavit and appointed a court doctor and an attorney for appellant.

{¶ 5} The probate court conducted the full hearing on May 20, 2022. At the hearing, Dr. William Bates, the court doctor, testified that, based on a reasonable degree of psychiatric certainty, it was his opinion that appellant suffered from an unspecified schizophrenia spectrum disorder with polysubstance abuse. Dr. Bates further testified that appellant's history of substance abuse made the origins of appellant's psychiatric symptoms unclear, but Dr. Bates found appellant to be suffering from a psychotic disorder with persecutory delusions which caused appellant to be unable to function in the community.

Dr. Bates considered appellant to pose a risk of harm to himself and opined that the least restrictive environment in which appellant's needs could be met was an in-patient psychiatric setting with medication. With treatment, Dr. Bates believes appellant's prognosis for stabilizing and returning to functional baseline is good.

{¶ 6} Appellant appeared telephonically and testified on his own behalf. Appellant denied ever having symptoms of psychosis and characterized himself as being in shock after being defamed and attacked. He stated he is not paranoid but is too relaxed regarding the security of his home and vehicle. Appellant denied barricading himself in his house or sleeping in his car for more than a few hours on two occasions. Appellant described himself as a peaceful person who has never hurt himself or others. According to appellant, he has not been prescribed any medication since his 2018 hospitalization, and he described that incident as similarly involving false allegations and misunderstandings of his behavior.

{¶ 7} During his testimony, appellant requested a continuance to obtain several additional witnesses, including a doctor, a social worker, and an attorney that he worked with during his 2018 charges. Appellant stated he primarily intended these individuals to testify about the events in 2018 but that he also wanted the doctor to testify about his current medical condition. Counsel for appellant informed the court she spoke with appellant the previous day about securing witnesses, but that appellant did not advise her of any particular individuals he wished to call. Further, counsel for appellant stated that when she informed appellant of his right to an evaluation by an independent expert, appellant did not express a desire to exercise that right. Counsel understood appellant's request for additional witnesses to be as fact witnesses rather than expert witnesses. Additionally, counsel refuted appellant's characterization of her interactions with him as limited, instead noting that she had spent a substantial amount of time speaking with appellant the previous days.

{¶ 8} MHR opposed appellant's request for a continuance on the basis that the requested witnesses would not be used to address the ultimate issue: whether appellant met the statutory criteria for involuntary hospitalization. The magistrate denied the request for a continuance.

{¶ 9} At the conclusion of the hearing, the magistrate determined there was clear and convincing evidence that appellant suffered from mental illness diagnosed as an

unspecified schizophrenia spectrum disorder resulting in a gross impairment of judgment, behavior, capacity to recognize reality, and ability to meet the ordinary demands of life. The magistrate found appellant to be subject to hospitalization pursuant to R.C. 5122.01(B)(3) and ordered him to be committed to MHR for involuntary in-patient hospitalization at TVBH for a period not to exceed 90 days.

{¶ 10} Appellant filed objections to the magistrate's decision, arguing the magistrate's decision was based on falsified records and that he should have been granted a continuance to call witnesses. The probate court conducted a hearing on the objections on June 3, 2022.

{¶ 11} In a June 3, 2022 judgment entry, the probate court overruled appellant's objections and adopted the magistrate's decision as its own. The probate court found there was competent, credible evidence to support the magistrate's finding that appellant is a mentally ill individual subject to court order under R.C. 5122.01(B)(3). Thus, the probate court ordered appellant subject to involuntary civil commitment to MHR with placement at TVBH for a period not to exceed 90 days. Appellant timely appeals.

## II. Assignment of Error

{¶ 12} Appellant assigns the following sole assignment of error for our review:

> The trial court erred in adopting the May 20, 2022 magistrate's report and decision finding that appellant suffers from a mental illness requiring hospitalization.

## III. Discussion

{¶ 13} In his sole assignment of error, appellant argues the probate court erred in adopting the magistrate's finding that appellant is a mentally ill person subject to court order pursuant to R.C. 5122.01(B)(3). More specifically, appellant alleges the probate court's commitment order is against the manifest weight of the evidence presented at the May 20, 2022 hearing. This court will not reverse a finding that a respondent is a mentally ill person subject to court order under R.C. 5122.01 as against the manifest weight of the evidence if some competent, credible evidence going to all the essential elements of the case supports the order. *In re J.L.S.*, 10th Dist. No. 21AP-693, 2022-Ohio-3539, ¶ 11, citing *In re K.W.*, 10th Dist. No. 06AP-731, 2006-Ohio-4908, ¶ 6, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978).

{¶ 14} R.C. Chapter 5122 governs the specific procedures for the involuntary commitment of a person to a mental hospital. In a non-emergency situation, the filing of an affidavit of mental illness in the probate court commences the process. *J.L.S.* at ¶ 12, citing *In re P.A.*, 10th Dist. No. 17AP-728, 2018-Ohio-2314, ¶ 9, citing R.C. 5122.11; *In re A.C.*, 10th Dist. No. 20AP-82, 2021-Ohio-2116, ¶ 12. The affiant must set forth facts in the affidavit sufficient to indicate probable cause to believe that the person named is a mentally ill person subject to court order. *J.L.S.* at ¶ 12, citing *P.A.* at ¶ 9, citing R.C. 5122.11. If the probate court finds probable cause exists, the court may order the temporary detention of the person and/or set the matter for further hearing. *Id.*, citing *P.A.* at ¶ 9, citing R.C. 5122.11.

{¶ 15} The probate court must afford the person alleged to be mentally ill a full hearing in accordance with due process of law and as required by R.C. Chapter 5122. *J.L.S.* at ¶ 13, citing *P.A.* at ¶ 10. At the completion of the full hearing, if the probate court finds "by clear and convincing evidence that the respondent is a mentally ill person subject to court order," the probate court may commit the person to a hospital for a period not to exceed 90 days. R.C. 5122.15(C); *J.L.S.* at ¶ 13.

{¶ 16} Pursuant to Ohio law, courts utilize a three-part test to determine when to order an involuntary commitment. *J.L.S.* at ¶ 14, citing *In re T.B.*, 10th Dist. No. 06AP-477, 2006-Ohio-3452, ¶ 7. The court must determine, by clear and convincing evidence, that: (1) the individual suffers from a substantial disorder of thought, mood, perception, orientation, or memory, (2) the disorder grossly impairs the individual's judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life, and (3) the individual is subject to court order for one of the reasons set forth in R.C. 5122.01(B). *Id.*, citing *T.B.* at ¶ 7, citing R.C. 5122.01(A). R.C. 5122.01(B)(1) through (4) provides:

> "Mentally ill person subject to court order" means a mentally ill person who, because of the person's illness:
>
> (1) Represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;
>
> (2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in

reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;

(3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community;

(4) Would benefit from treatment for the person's mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person[.]

{¶ 17} In determining whether a person is a mentally ill person within the meaning of R.C. 5122.01(B), the court must consider the person's present mental state based on both his current or recent behavior and his prior dangerous propensities. *J.L.S.* at ¶ 15, citing *In re Burton*, 11 Ohio St.3d 147, 149 (1984). R.C. 5122.01(B) affords the probate court broad discretion to review the individual's past history in order to make a well-informed decision regarding the individual's present mental condition. *Id.*, citing *Burton* at 149. The Supreme Court of Ohio directs trial courts to apply a "totality of the circumstances" test to determine whether a person is subject to hospitalization pursuant to R.C. 5122.01(B). *Burton* at 149. "This test balances the individual's right against involuntary confinement in deprivation of his liberty, and the state's interest in committing the emotionally disturbed." *Id.* Under the totality of the circumstances test, a court considers the following non-exhaustive list of factors: (1) whether, in the court's view, the individual represents a substantial risk of physical harm to himself or other members of society, (2) psychiatric and medical testimony related to the individual's present mental and physical condition, (3) the individual's insight into his or her condition such that the individual will continue treatment as prescribed or seek professional assistance when needed, (4) the state's grounds for the proposed commitment, (5) the individual's past history to the extent it is relevant to show the individual's degree of conformity to the laws, rules, regulations, and values of society, and (6) where there is evidence that the individual's mental illness is in a state of remission, the court must consider the medically suggested cause and degree of the remission and the probability that the individual will continue treatment to maintain the

remissive state should he or she be released from confinement. *J.L.S.* at ¶ 15, citing *Burton* at 149-50. Additionally, the trial court may consider other relevant evidence in making an informed decision about the individual's present medical condition. *Id.*, citing *Burton* at 149-50.

{¶ 18} At the May 20, 2022 hearing, Dr. Bates testified that, based on a reasonable degree of medical certainty, appellant suffers from a psychotic disorder with persecutory delusions which caused appellant to be unable to function in the community. Dr. Bates testified he reached this conclusion after reviewing appellant's medical records and conducting an in-person examination of appellant. He further testified his conclusion is based "at least in major part" on his examination and personal observations of appellant. (Tr. at 7.) On cross-examination, Dr. Bates stated he did not observe anything specific in his interaction with appellant that supported his conclusion that appellant presents a substantial risk of harm to himself and others; rather, Dr. Bates stated he formed his opinion based on appellant's history and noted that appellant was reserved and directed Dr. Bates to appellant's written documents if Dr. Bates wanted more information.

{¶ 19} On appeal, appellant argues the probate court erred in finding appellee proved, by clear and convincing evidence, that: (1) appellant represented a current substantial risk of harm to himself, (2) appellant's then-present mental state warranted hospitalization, and (3) appellant suffered from a substantial disorder of thought resulting in a gross impairment of judgment, behavior, capacity to recognize reality, and ability to meet the ordinary demands of life as required by R.C. 5122.01(B). Having reviewed the entire record in light of the *Burton* factors, we find competent, credible evidence in the record to support the probate court's determination that appellant is a mentally ill person subject to court order pursuant to the criteria set forth in R.C. 5122.01(B)(3), and that hospitalization for a period of not more than 90 days is the least restrictive option available.

{¶ 20} Appellant argues Dr. Bates' testimony did not constitute competent, credible evidence because his testimony simply mirrored the allegations in Dr. Savageau's affidavit. First, we are mindful that appellant does not, on appeal, challenge the reliability of the information contained in Dr. Savageau's affidavit. Though he maintained throughout the probate court proceedings that the affidavit was based on lies and denied any allegations of paranoid or delusional behavior, appellant does not argue to this court that the affidavit

does not satisfy the requirements of R.C. 5122.11. Second, and more importantly here, Dr. Bates did not testify that he formed his opinion based solely or even primarily on the affidavit. Instead, Dr. Bates testified he formed his opinion about appellant's mental health after reviewing appellant's medical records and personally examining and observing appellant. That Dr. Bates' conclusions are consistent with the allegations contained in the affidavit does not render Dr. Bates' conclusions inherently unreliable. Moreover, even if Dr. Bates did review the contents of Dr. Savageau's affidavit and incorporate the affidavit into his overall findings, appellant points to no authority that would preclude a psychiatric expert from reviewing the statements contained in the R.C. 5122.11 affidavit and incorporating those statements into his ultimate opinion as to whether an individual is a mentally ill person subject to court order for one of the reasons stated in R.C. 5122.01(B). *J.L.S.* at ¶ 34 ("appellant cites no case—and this court is aware of none—precluding a psychiatric expert such as Dr. Bates from reviewing statements set forth in an affidavit of mental health and incorporating those statements in formulating his assessment"); *In re A.C.* at ¶ 30 (affirming probate court, and noting the court doctor formed his opinions after reviewing the affidavit of mental health, the individual's mental health records, and the records of the individual's prior hospitalization, as well as conducting a personal interview with the individual).

{¶ 21} Additionally, appellant asserts there was not any evidence demonstrating that his then-present mental state warranted hospitalization or that he represented a current substantial risk to himself. To the extent appellant asserts the evidence at trial was insufficient because it relied on allegations of appellant's past behavior, we note that the *Burton* factors related to an individual's current substantial risk and present mental and physical condition "must be evaluated 'upon current or recent behavior as well as prior dangerous propensities of the person' and that the trial court is afforded broad discretion 'to review this individual's past history in order to make a well-informed determination of his present mental condition.' " (Emphasis omitted.) *J.L.S.* at ¶ 35, quoting *Burton* at 149 (noting "*Burton* does not temporally define 'current or recent behavior,' 'prior dangerous propensities,' 'past history,' or 'present mental condition' "). Here, only four days had elapsed from the time Dr. Savageau filed the affidavit to the time the probate court conducted the hearing in which Dr. Bates testified. We further note that Dr. Bates

specifically testified that appellant had paranoid delusions that caused him to not function in the community, and that appellant "can't take care of his basic needs *right now*" because his persecutory delusions cause him to strike out and increases the risk for violent behavior. (Emphasis added.) (Tr. at 9-10.) Thus, we do not agree with appellant that the probate court lacked competent, credible evidence related to his then-present mental state or the current risk he presented to himself.

{¶ 22} We are also mindful that Dr. Bates was the only psychiatric expert to testify in this matter. Significantly, appellant did not submit the testimony of an expert psychiatrist to rebut Dr. Bates' opinions, and appellant's trial counsel stated she had informed appellant he had the right to an independent expert evaluation but appellant did not indicate he wanted to exercise that right. Dr. Bates presented testimony that, though concise, was consistent with the other evidence in the record. *See A.C.* at ¶ 33 (affirming the probate court's finding that appellant was a mentally ill person subject to court order pursuant to R.C. 5122.01(B)(4) where only one psychiatric expert testified and appellant did not present testimony of another expert to rebut that opinion); *J.L.S.* at ¶ 36 (affirming the probate court finding of mentally ill person subject to court order, and noting "that Dr. Bates was the only psychiatric expert to testify in this matter" and "[a]ppellant did not submit the testimony of an expert psychiatrist to rebut the opinions expressed by Dr. Bates").

{¶ 23} Having reviewed the record in its entirety, we conclude that competent, credible evidence supports the probate court's determination that, by clear and convincing evidence, appellant is a mentally ill person subject to court order under R.C. 5122.01(B)(3). Accordingly, we overrule appellant's sole assignment of error.

## IV. Disposition

{¶ 24} Based on the foregoing reasons, competent, credible evidence supports the probate court's determination that appellant is a mentally ill person subject to court order under R.C. 5122.01(B)(3). Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.

*Judgment affirmed.*

BOGGS and EDELSTEIN, JJ., concur.

_____