[Cite as *In re R.W.*, 2026-Ohio-2344.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

In re R.W.

Court of Appeals No.  WD-26-004

Trial Court No.  2025-6005

## DECISION AND JUDGMENT

Decided:  June 18, 2026

* * * * *

Karin L. Coble, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**Zmuda, J.**

## I. Introduction

{¶ 1} This accelerated matter is before the court on appeal of the judgment of the Wood County Court of Common Pleas, Probate Division, finding appellant, R.W., is a mentally ill person subject to court order and entering a 90-day order, referring R.W. to the Wood County Alcohol, Drug Addiction, and Mental Health Services Board or its

designee and ordering compliance with recommended services, pursuant to R.C. 5122.15(C)(4).[1]

## II. Background and Procedural History

{¶ 2} R.W. is a 33-year-old who lives with their parents. In 2023, R.W. began reporting visions and hearing spirits, and R.W.'s parents heard R.W. yelling at the spirits and giving the spirits orders, threatening to eradicate the spirits if they did not obey. R.W. also stated that R.W. was the bride of god and god's mystic. Over the period between 2023 and late 2025, R.W.'s parents became increasingly concerned with R.W.'s behavior, and urged R.W. to seek mental health treatment, but R.W. refused.

{¶ 3} On November 17, 2025, R.W.'s father ("Father") filed two affidavits of mental illness as next of kin, pursuant to R.C. 5122.111, stating R.W. posed a substantial risk of physical harm to self and others under R.C. 5122.01(B)(1), (2), and (4), based on evidence of "recent homicidal or other violent behavior or recent threats that place another in reasonable fear of violent behavior and serious physical harm," stating R.W. "would benefit from treatment for mental illness and is in need of such treatment[.]" Father indicated that R.W. refused to see a psychiatrist or psychologist and refused medication, based on an aversion to the mind-numbing effects of medication.

---

[1] Although the 90-day order expired March 30, 2026, the judgment is a final order pursuant to R.C. 5122.15(K), and the statute contemplates subsequent 90-day orders upon application for continued commitment. Additionally, the probate court's determination under R.C. 5122.15 results in the person's name added to a confidential database maintained by the Ohio Attorney General, as provided under R.C. 5122.311.

2.

{¶ 4} That same day, the probate court referred the matter to Unison Health of Wood County for review and assessment of R.W., pursuant to R.C. 5122.13. Unison conducted the assessment in R.W.'s home and determined R.W. did not meet the criteria for "immediate, involuntary, psychiatric hospitalization." Unison recommended a referral to an assisted outpatient program.

{¶ 5} On December 18, 2025, the probate court held a full hearing pursuant to R.C. 5122.15. The evidence adduced at hearing included Father's testimony and audio and video recordings of R.W.'s behavior. Father testified that R.W. engages in cutting behavior, and Father overhears R.W. talking to the voices, telling the voices they "can't make me commit suicide." Father further testified that R.W. described the ways they would commit suicide, i.e. gunshot to the head, car accident, or cutting the femoral artery. In addition to talk of suicide, Father testified that R.W. engages in conversations with "spirits," but also frequently screams violently at walls, stars, or people, and the conversations occur at all hours of the day and night. On one occasion, R.W. punched a hole in the wall during the conversation with spirits. R.W. told Father on numerous occasions that the spirits wanted R.W.'s parents killed.

{¶ 6} Father further testified that R.W. described their spiritual beliefs based on reading religious texts, internet sources, and Cthulhu mythology. R.W. also expressed frustration with the state of the world and stated that employment is against R.W.'s moral belief because work aids a corrupt system. R.W. referenced other planes of existence and R.W.'s "contract" with God and the "components" R.W. needs for the next existence. In one episode, R.W. stated that Father would be "eliminated in this spiritual plane"

3.

addressing Father with an angry and threatening demeanor. In a subsequent episode, R.W. again discussed killing R.W.'s parents while in an agitated state but stated that R.W. would not "lift a hand physically" and referenced a serpent around Father's neck.

{¶ 7} The trial court admitted audio recordings and video recordings, without objection, including video recordings of episodes occurring on September 1, 2025, September 29, 2025, and October 11, 2025. In the recordings, R.W. can be heard talking or yelling at spirits and referencing rituals involving blood and water. The video also captured conversations between R.W. and the spirits regarding the killing of R.W.'s parents, although R.W. believed the spirits would commit the killing after forcing Father to change his will so that R.W. inherits Father's estate.

{¶ 8} Father testified that he maintained a journal of R.W.'s behavior over the years, and R.W.'s most recent behavior was increasingly alarming and more frequent. However, Father's testimony and the recordings demonstrated that R.W. never expressed any threat that R.W. would personally kill or harm themself or R.W.'s parents, but instead, R.W. repeatedly told Father that R.W. ordered spirits to kill R.W.'s parents. Additionally, Father acknowledged that R.W. had not inflicted self-harm that required medical intervention, to date, but R.W. told Father they performed "blood rituals" and R.W. exhibited obsessive behavior, constantly washing their hands, and R.W. recently punched a hole through a wall in the home. R.W. told Father of the threats posed by the "spirits," and Father testified that he and R.W.'s mother keep their bedroom door locked at night.

4.

{¶ 9} Following the hearing, the probate court granted the parties leave to submit written closing arguments. Upon completion of briefing, the probate court entered a thorough judgment and made extensive factual findings.

{¶ 10} The probate court found that R.W. was assessed by Unison Health and did not meet the criteria for immediate, involuntary, psychiatric hospitalization. The court also found that R.W. refuses any professional intervention with obvious mental health issues, and that the video recordings contain multiple offers by Father to help R.W. get treatment, with R.W. refusing to listen to Father or accept help. As R.W. refused to acknowledge any mental health issues and rejected therapy and medications, the probate court found no "diagnosis or prognosis" in the matter.

{¶ 11} The probate court found, however, that the evidence and Father's testimony demonstrated significant mental health episodes that "have become increasingly alarming and frequent," with the probate court outlining the three episodes captured on video. The probate court noted specific portions of the video recording of each episode.

{¶ 12} On September 1, 2025, R.W. "is heard referencing spirits and angels and rituals" that included R.W. performing rituals involving blood and water, describing the video as "serious and tense." Father testified that, during this episode, R.W. got in Father's face with clenched fists.

{¶ 13} On September 29, 2025, R.W. again spoke "loudly to or about various spirits" and told Father he would be "eliminated in this spiritual plane" if Father continued certain activities. R.W. appeared "tense and very angry" and the court agreed with Father's testimony that R.W. was "dark, angry, and threatening" during this episode.

5.

{¶ 14} Finally, on October 11, 2025, R.W. was engaged in conversation or argument regarding killing R.W.'s parents "physically," with R.W. agitated and confrontational. R.W. insisted that the spirits would "physically" kill the parents.

{¶ 15} The probate court noted that R.W.'s parents "begged and pleaded" with R.W. to seek professional help but R.W. refuses to see a doctor or receive mental health assistance and refuses to take medications that will "numb your mind." The court further found that R.W.'s family has sought police assistance on more than once occasion because of R.W.'s behaviors, but appeared calm when police arrived so that police "have been unable to provide direct assistance."

{¶ 16} Finding the record demonstrated clear and convincing evidence, the probate court determined that R.W. is a mentally ill person in need of treatment pursuant to R.C. 5122.01(B)(1), (B)(2), and (B)(4), which provides:

> "Person with a mental illness subject to court order" means a person with a mental illness who, because of the person's illness:
>
> (1) Represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;
>
> (2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;
>
> …
> (4) Would benefit from treatment for the person's mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person;

6.

{¶ 17} The probate court further determined the least restrictive alternative for treatment to be outpatient services through the Wood County Board of Alcohol, Drug Addiction, and Mental Health Services Board or their designee, pursuant to R.C. 5122.15(C)(4). The court ordered R.W. to complete a diagnostic assessment and recommended services, for a period of ninety days.

{¶ 18} R.W. filed an appeal from this order, asserting a single assignment of error as follows:

> The finding that [R.W.] is a mentally ill person subject to court order and court ordered services was not proven by clear and convincing evidence.

### III. Analysis

{¶ 19} R.C. 5122.15 requires a probate court to determine, by clear and convincing evidence, whether the respondent in involuntary commitment proceedings is "a mentally ill person subject to hospitalization by court order." R.C. 5122.15(C). Furthermore, pursuant to R.C. 5122.15(E), the probate court must "order the implementation of the least restrictive alternative available and consistent with treatment goals." Clear and convincing evidence is more than a preponderance, but less than the certainty required by proof beyond a reasonable doubt; it is "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 477 (1954).

{¶ 20} In considering whether there is clear and convincing evidence to support a determination of a mentally ill person subject to court order, courts apply a "totality of

7.

the circumstances" test. *In re Burton,* 11 Ohio St.3d 147 (1984), paragraph one of the

syllabus.

> Factors which are to be considered by the court in a commitment hearing include, but are not limited to, the following: (1) whether, in the court's view, the individual currently represents a substantial risk of physical harm to himself or other members of society; (2) psychiatric and medical testimony as to the present mental and physical condition of the alleged incompetent; (3) whether the person has insight into his condition so that he will continue treatment as prescribed or seek professional assistance if needed; (4) the grounds upon which the state relies for the proposed commitment; (5) any past history which is relevant to establish the individual's degree of conformity to the laws, rules, regulations and values of society; and (6) if there is evidence that the person's mental illness is in a state of remission, the court must also consider the medically suggested cause and degree of the remission and the probability that the individual will continue treatment to maintain the remissive state of his illness should he be released from commitment.

*Burton* at 149-150. Furthermore, courts are not limited to these factors. "The court may,

in its discretion, consider other relevant evidence to make an informed decision as to the

person's present mental condition." *Burton* at 150.

{¶ 21} On appeal, R.W. challenges the probate court's judgment as well as the

affidavit filed by Father, arguing neither the affidavit nor the evidence adduced at the

hearing demonstrated support for the probate court's judgment.

{¶ 22} As to the affidavit, R.W. argues that, lacking a certificate of a medical or

mental health provider, there was insufficient evidence to invoke the probate court's

jurisdiction and commence the proceedings. However, the affidavit filed pursuant to R.C.

5122.11 does not require such certification. Instead, R.C. 5122.11 provides:

> The affidavit shall contain an allegation setting forth the specific category or categories under division (B) of section 5122.01 of the Revised Code upon which the jurisdiction of the court is based and a statement of alleged

8.

facts sufficient to indicate probable cause to believe that the person is a person with a mental illness subject to court order. The affidavit may be accompanied, or the court may require that the affidavit be accompanied, by a certificate of a psychiatrist, or a certificate signed by a licensed clinical psychologist and a certificate signed by a licensed physician stating that the person who issued the certificate has examined the person and is of the opinion that the person is a person with a mental illness subject to court order, or shall be accompanied by a written statement by the applicant, under oath, that the person has refused to submit to an examination by a psychiatrist, or by a licensed clinical psychologist and licensed physician.

Thus, the probate court "may require" a certification from a medical or mental health professional who has examined the person. R.C. 5122.11. Where, as in this case, the person refuses examination, the affiant may alternatively submit "a written statement by the applicant, under oath, that the person has refused to submit to an examination" by a medical or mental health professional. *Id.*

{¶ 23} The proceedings concerning R.W. were initiated as a non-emergency commitment under R.C. 5122.11. Such proceedings are "commenced by the filing of an affidavit alleging facts to indicate probable cause to believe that the person is mentally ill subject to court-ordered hospitalization, thereby invoking the jurisdiction of the court. "If the affidavit is sufficient to indicate probable cause, the court must either issue a temporary order of detention or set the matter for hearing." *In re Miller,* 63 Ohio St.3d 99, 101 (1992), citing R.C. 5122.11.

{¶ 24} Father's affidavit, in this case, contained numerous factual allegations that illustrated R.W.'s behaviors and statements, as well as a written statement indicating R.W. refused any medical or mental health intervention. Upon receipt of the affidavit that contained factual allegations of mental illness, and prior to any order to take R.W. into

9.

custody for treatment, the probate court accepted the affidavit and ordered an investigation under R.C. 5122.13 as outlined by the statute. *See State ex rel. Bles v. Merrick,* 2 Ohio St.2d 13, 16 (1965) (providing that a proper affidavit "should be accepted and filed by the court" with further proceedings after any investigation). Pursuant to the statute, therefore, the lack of medical or mental health certification did not prevent the probate court from exercising jurisdiction.

{¶ 25} R.W. next challenges the evidence presented at the hearing. As previously addressed, the evidence consisted of Father's testimony as well as audio and video recordings of R.W. While admitting that the evidence demonstrated conduct that could be "considered concerning," R.W. argues the evidence also demonstrated that R.W.'s religious beliefs prevented any harm to self, and R.W. merely informed Father that "spirits" would eradicate Father, similar to R.W.'s claims that spirits would eradicate the universe, a statement R.W. argues was not meant to be taken literally. Additionally, R.W. argues that the "vague" threat Father perceived was not real enough to base a finding of a risk of harm to others.

{¶ 26} In this case, the probate court proceeded to a full hearing pursuant to R.C. 5122.15 and received evidence that demonstrated more than religious belief or a "vague" threat of harm to R.W. and others. Instead, the record demonstrates evidence of erratic and confrontational behavior, evidence of self-harm and voices urging suicide and parricide, and evidence showing R.W. interacting with the voices, often in an agitated state accompanied by yelling and ranting. R.W., furthermore, demonstrated delusions

10.

accompanied by a denial of any mental health conditions, showing a lack of insight regarding their condition.

{¶ 27} The probate court addressed the factors under *In re Burton,* and determined R.W. represented a current and substantial risk of physical harm to self and others, that R.W. lacked insight into their condition, preventing R.W. from seeking treatment, and that Father had presented evidence to support the grounds for the proposed involuntary treatment. *See Burton,* 11 Ohio St.3d at 149-150. We have previously noted that evidence of similar behavior, as exhibited by R.W., coupled with a lack of insight and denial of the need for mental health treatment satisfies the requirement for involuntary treatment as defined by R.C. 5122.01(B). *See, e.g. In re C.G.,* 2023-Ohio-4239 (6th Dist.), ¶ 55-60 (finding C.G. exhibited paranoid behavior and refused any medication in favor of "natural" substances like marijuana, and was unable to provide for her basic needs or the needs of her children in her current condition); *see also In re K.W.,* 2006-Ohio-4908, ¶ 18 (10th Dist.); *In Matter of A.C.,* 2021-Ohio-2116, ¶ 33 (10th Dist.).

{¶ 28} Considering the record in this case, R.W. fails to demonstrate error by the probate court in applying the law to the evidence admitted at the hearing. Therefore, after thorough review of the record, we find the probate court's decision, finding R.W. is a mentally ill person subject to court order and ordering out-patient treatment as the least restrictive alternative for treatment, was based on clear and convincing evidence. R.W.'s sole assignment of error is not well-taken.

11.

## IV. Conclusion

**{¶ 29}** Finding substantial justice has been done, we affirm the judgment of the Wood County Court of Common Pleas, Probate Division, and remand the matter back to that court for further proceedings consistent with R.C. 5122.01 et seq. R.W. is ordered to pay the costs of the appeal pursuant to App.R. 24(A)(2).

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.
_____
JUDGE

Gene A. Zmuda, J.
_____
JUDGE

Charles E. Sulek, J.
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.